**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
(212) 237-1000
Charles E. Simpson (CES-2130)

Attorneys for Source Enterprises, Inc.,
    Debtor-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
In re:                              :
                                    :
SOURCE ENTERPRISES, INC.,           :   Chapter 11 Case
                                    :   No. 06-11707 (AJG)
                    Debtor.         :
                                    :
------------------------------------x

### PLAN OF REORGANIZATION

Source Enterprises, Inc., Debtor-in-Possession (the

"Debtor"), hereby proposes this Chapter 11 Plan of

Reorganization pursuant to section 1121(b) of chapter 11 of

Title 11 of the United States Code.

### ARTICLE 1

### DEFINITIONS

1.1   Defined Terms. For the purpose of this Plan, each

of the terms set forth in this Article 1 shall have the meaning

ascribed thereto below and such meaning shall be equally

applicable to the singular and plural forms of the terms

defined. All of the definitions and provisions contained in this

Article are and shall be regarded as integral, substantive and
operative provisions of this Plan.

1.2  Other Terms.  A term that is used in the Plan and
not defined herein, but that is defined in the Disclosure
Statement accompanying the Plan, the Bankruptcy Code or in
the Federal Rules of Bankruptcy Procedure, shall have the
meaning set forth therein. Any reference contained in this
Plan to a particular exhibit, paragraph or article shall be
deemed to be a reference to an exhibit, paragraph or
article of this Plan.

1.3  Rules of Construction.  The rules of construction
set forth in section 102 of the Bankruptcy Code shall be
applicable to all of the provisions of this Plan, without
in any way limiting the foregoing, as used in this Plan,
the words "includes" and "including" are without
limitation.

"Administrative Claim" shall mean any cost or
expense of administration of the Case allowed under
sections 503(b) and 507(a)(1) and (b) of the Bankruptcy
Code, including all allowances of compensation or reimbursement
of expenses to the extent Allowed by the Bankruptcy Court upon
entry of a Final Order under section 330 of the Bankruptcy Code
and the Federal Rules of Bankruptcy Procedure, and any fees or

-2-

{10360275:8}

charges assessed against the Debtor's estate under 28 U.S.C. $1930.

"Administrative Claims Bar Date" shall mean thirty (30) days after the Confirmation Date.

"Allowed" when used as an adjective preceding the word "Claim" or "Equity Interest", shall mean any Claim or Equity Interest in the Debtor:

a.   in respect of which a proof of claim or interest has been filed with the Court on or before the Bar Date and as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Final Order or this Plan;

b.   which has been or hereafter is scheduled by the Debtor as liquidated in amount and not disputed or contingent as to amount, as to which no objection to the allowance thereof has been interposed within any applicable period of limitation;

c. as to which any such objection has been interposed, to the extent such Claim or Equity Interest has been allowed by a Final Order; or,

d. any Claim or Equity Interest specifically identified in this Plan as an Allowed Claim or an Allowed Equity Interest.

-3-

"Assets" shall mean the Property and all other property (real or personal, tangible or intangible), rights and interests of the Debtor to be transferred pursuant to the terms of this Plan.

"Bankruptcy Code" shall mean the Bankruptcy Reform Act of 1978, as amended, and in effect on the date of this Plan and set forth in Title 11 of the United States Code.

"Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure, as amended, and the Local Rules of the Bankruptcy Court.

"Bar Date" shall mean the last date fixed by Final Order of the Bankruptcy Court for filing proofs of claim or interest in this Chapter 11 case.

"Black Enterprise/Greenwich Street Corporate Growth Partners L.L.P., or "BE/GS" shall mean the holder of the Debtor's Series A Preferred Shares, convertible by its terms into Equity Interests of 18.04%.

"Business Day" shall mean any day on which commercial lenders are open for business in New York, New York.

"Case" shall mean the Debtor's case under chapter 11 of the Bankruptcy Code, Chapter 11 Case No. 06-11707 (AJG), which was commenced by the filing of an involuntary chapter 7 petition with the Bankruptcy Court on the Petition Date, which involuntary chapter 7 case was subsequently converted to this

-4-

case under chapter 11 of the Bankruptcy Code by Order of the Bankruptcy Court, dated September 21, 2006.

"Cash" shall mean, with respect to payment under the Plan, lawful currency of the United States of America, regular check, certified check, bank check or wire transfer from a domestic bank.

"Cause(s) of Action" shall mean any and all actions, proceedings, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise.

"Chase" shall mean JP Morgan Chase Bank, N.A., 177 Montague Street, Brooklyn, New York 11201.

"Claim" shall mean the right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an

equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

"Claims Objection Deadline" shall mean the first Business Day which is at least 90 days after the Effective Date, or such other subsequent Business Day as may be established by Order of the Bankruptcy Court.

"Common Equity Interests" shall mean shares of Source Enterprises, Inc.'s common stock that were authorized, issued and outstanding prior to the Effective Date.

"Confirmation Date" shall mean the date on which conditions to confirmation are either satisfied or waived in accordance with the terms of this Plan and the Confirmation Order.

"Confirmation Order" shall mean the Final Order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

"Consummation Date" shall mean the date when all payments under the Plan have been made and all of the Debtor's assets have been administered.

"Court" or "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of New York, and any appellate or other court that is competent to exercise jurisdiction over any matter or proceeding arising in or relating to this Chapter 11 Case.

{10360275:8}

"Creditor's Committee" shall mean the Official Committee of Unsecured Creditors of Source Enterprises, Inc., Debtor-in-Possession, appointed by the United States Trustee on September 26, 2006, pursuant to Section 1102 of the Bankruptcy Code.

"Cure" shall mean the distribution of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption of an executory contract or unexpired lease, pursuant to section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties, under such executory contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

"Debtor" shall mean Source Enterprises, Inc., a Delaware corporation and the Debtor-in-Possession in this Chapter 11 case.

"DIP Credit Facility" shall mean the debtor-in-possession financing facility between the Debtor as Borrower, and BE/GS, as DIP Lender, approved by Final Order of the Bankruptcy Court, dated October ___, 2006, pursuant to which the Debtor is permitted to borrow up to an aggregate of $3.0 million

from BE/GS on the terms and conditions set forth in a Secured Promissory Note and Security Agreement.

"DIP Lender" shall mean BE/GS.

"DIP Lender Claims" shall consist of all amounts outstanding under the Debtor's DIP Credit Facility to BE/GS, which shall be deemed Allowed in accordance with the terms and conditions of the DIP Credit Facility and Final Order of the Bankruptcy Court, dated October 25, 2006, authorizing post-petition secured financing.

"Disbursing Agent" shall mean the Reorganized Debtor and any successor thereafter appointed by a Final Order for the purpose of making distributions under the Plan.

"Disclosure Statement" shall mean the written disclosure statement that relates to the Plan, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code and Rule 3017 of the Bankruptcy Rules.

"Disputed Claim" shall mean a Claim that is not an Allowed Claim.

"Disputed Claim Reserve" shall mean an amount sufficient to pay the distribution to which the amount of a Disputed Claim is entitled under this Plan, to be held in escrow at Chase by the Disbursing Agent until the claim is expunged by Order of the Bankruptcy Court or the claim becomes an Allowed Claim.

-8-

"Distribution" shall mean any distribution pursuant to the Plan to holders of Allowed Claims.

"Effective Date" shall mean the Business Day the Plan becomes effective as provided in Article 8.

"Equity Interest" or "Interest" shall mean an "equity security", as that term is defined in section 101(16) of the Bankruptcy Code, as such existed on the Petition Date.

"Estate" shall mean the estate created pursuant to section 541 of the Bankruptcy Code upon the commencement of his Case.

"Executory Contract" shall mean the type of agreement contemplated by the like term found in section 365 of the Bankruptcy Code.

"Final Order" shall mean an order of the Court which shall not have been reversed, stayed, modified or amended and:

   a.   the time to appeal from or to seek review or rehearing of same shall have expired;

   b.   no appeal, review, certiorari or rehearing is pending; and,

   c.   the order has become conclusive of all matters adjudicated and is in full force and effect.

"General Unsecured Claim" shall mean a Claim which is not an Administrative Claim, Priority Claim, Prepetition Credit

{10360275:8}

Facility Claim, DIP Claim, or section 502(f) Claim and is not classified as a Claim included in any of Classes 1, 2, 4, or 5.

"Impaired" shall mean, when used in reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"Indemnification Obligations" shall mean any obligation of the Debtor to indemnify, reimburse or provide contribution to any Professional, advisor, director, officer, employee, agent or representative of the Debtor, pursuant to the bylaws, articles of incorporation, contract or otherwise.

"Liens" shall mean any and all liens, security interests, encumbrances, mortgages, pledges, restrictions, charges, instruments, licenses, encroachments, options, rights-of-recovery, judgments, orders and decrees of any court or governmental entity, interests, products, tax (including state and local taxes with respect to real estate) and any other liabilities, claims, causes of action and all claims of any kind or nature, whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, liquidated or unliquidated, material or non-material, known or unknown.

{10360275:8}

"Non-Tax Priority Claims" shall mean a claim, other than an Administrative Claim or Priority Tax claim, which is entitled to priority in payment pursuant to Section 507(a) of the Bankruptcy Code.

"Person" shall mean an individual, corporation, partnership, joint venture, association, joint stock company, limited liability partnership, trust, estate, unincorporated organization, statutory committee or other entity.

"Petition Date" shall mean July 27, 2006, the date on which the involuntary petition under chapter 7 of the Bankruptcy Code was filed against the Debtor, which the Debtor subsequently converted to a case under chapter 11 of the Code.

"Plan" shall mean this Plan of Reorganization of the Debtor, including any exhibits hereto (which exhibits are hereby expressly incorporated in this Plan by reference as if set forth herein in their entirety), and any amendments, modifications or corrections to this Plan.

"Plan Documents' shall mean the Plan, together with any contract, instrument, release or other agreement or document entered into in connection with the Plan.

"Preferred Equity Interests" shall mean shares of Source Enterprises, Inc.'s Series A Preferred Stock that were authorized, issued and outstanding prior to the Effective Date.

-11-

"Priority Claim" shall mean, collectively, any Priority Tax Claim and Non-Tax Priority Claim entitled to priority in accordance with section 507 of the Bankruptcy Code other than an Administrative claim.

"Priority Tax Claim" shall mean a Claim of governmental unit of the kind specified in Section 502(i) and 507(a)(8) of the Bankruptcy Code.

"Professional" shall mean any professional employed in the Chapter 11 Case pursuant to Section 327, 328, 363 or 1103 of the Bankruptcy Code or otherwise and any professional for whom a Person is seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to Section 503(b)(4) of the Bankruptcy Code.

"Professional Fees" shall mean all fees, costs and expenses incurred in the Case related to services performed after the Petition Date and prior to and including the Effective Date, by any professional person (within the meaning of sections 327 or 1103 of the Bankruptcy Code or otherwise), retained by an order of the Bankruptcy Court, which fees, costs, and expenses shall have been awarded by Final order of the Bankruptcy Court pursuant to sections 330 or 503 (b) of the Bankruptcy Code

"Released Parties" shall mean (i) the Debtor, (ii) Textron (in its capacity as agent and Lender under the Credit Agreement and (iii) BE/GS (in its capacity as DIP Lender and

-12-

preferred shareholder), and each of their respective management, officers, directors, agents and professionals serving in such capacity as of the Effective Date.

"Reorganized Debtor" shall mean the successor to the Debtor on and after the Effective Date.

"Retained Professional" shall mean a professional entity which may be employed with the approval of the Bankruptcy Court under sections 327 and 1103 of the Bankruptcy Code.

"Schedules" shall mean the schedules of assets and liabilities and the statements of financial affairs, filed in the Chapter 11 Case by the Debtor, as such schedules or statements have been or may be amended or supplemented from time to time in accordance with Rule 1009 of the Bankruptcy Rules or Orders of the Bankruptcy Court.

"Secured Claim" shall mean a claim for which the holder has the right to look to certain specified collateral for satisfaction of its Claim and which Claim is secured by a security interest in or lien on property of the Estate to the extent of the value, as of the Effective Date or such other date as established by the Bankruptcy court, of such Claimholder's interest in the Estates' interest in property of the Estate or determined by a Final Order of the Bankruptcy Court pursuant to Section 506 of the Bankruptcy Code or as otherwise agreed upon in writing by the Debtor and the Claimant.

-13-

"Source Enterprises, Inc." shall mean the Debtor and Debtor-in-Possession in this chapter 11 case.

"Textron" shall mean Textron Financial Corporation, the Debtor's Secured Creditor, who holds as collateral security for its claim all of the Debtor's assets and 100% of the Equity Interests in the Debtor held by Mr. David Mays.

"Unsecured Claim" shall mean a claim which is not secured by collateral and which is not entitled to a priority under section 507(a) of the Bankruptcy Code.

## ARTICLE 2

### CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

2.1   Classification of Allowed Claims and Equity Interests. A Claim is in a particular class only to the extent that the Claim falls within the description of that class and is in a different class to the extent that the remainder of the Claim falls within the description of such different class. In addition, a Claim or Equity Interest in a particular class is entitled to a distribution under the Plan only to the extent that the Claim or Equity Interest is Allowed.  Claims treated by this Plan fall within the following categories or classes:

-- DIP Lender Super-priority Claim

-- Administrative Claims, Priority Tax Claims and Non-Tax Priority Claims

-- Section 502(f) Creditor Claims

-14-

{10360275:8}

Class 1    --    Secured Claims

Class 2    --    General Unsecured Claims

Class 3    -     Series A Preferred Shares

Class 4    --    Equity Interests

2.2    Impairment of Claims and Equity Interests.  Class 1 (Secured Claims), Class 2 (General Unsecured Claims), and Equity Interests in both Class 3 and Class 4, are impaired under the Plan.

2.3    Holders of Secured Claims.  Holders of Secured Claims against the Debtor shall have the benefit of their collateral.

## ARTICLE 3

## PROVISIONS FOR TREATMENT OF CLAIMS AND EQUITY INTERESTS

3.1    Unclassified Claims (not entitled to vote on the Plan).

(a)    *DIP Lender Claims*.  On the Effective Date, the DIP Lender shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for such Allowed Claim, 100% of the new Equity Interests in the Reorganized Debtor evidenced by new equity securities to be issued under this Plan, subject to the Textron warrant.

(b)    *Administrative Claims*.  On the later of (i) the Effective Date, (ii) the date on which its Administrative Claim

-15-

becomes Allowed, or (iii) the date on which its Administrative
Claim becomes payable under any agreement relating thereto, each
holder of an Allowed Administrative Claim shall receive, in full
and final satisfaction, settlement, release, and discharge of,
and in exchange for such Allowed Administrative Claim (x) Cash
equal to the unpaid portion of such Allowed Administrative Claim
or (y) such other less favorable treatment as to which the
Debtor and such holder of an Allowed Administrative Claim shall
have agreed upon in writing.  Notwithstanding the foregoing, (a)
any Administrative Claim based on a liability incurred by the
Debtor in the ordinary course of business during the Chapter 11
Case may be paid in the ordinary course of business in
accordance with the terms and conditions of any agreement
relating thereto and (b) any Administrative Claim may be paid on
such other terms as may be agreed on between the holder of such
Claim and the Debtor or the Reorganized Debtor.  However,
subsection (b) of this section of the Plan shall not be
construed to avoid the need for Bankruptcy Court approval of an
Administrative Claim when such approval is otherwise required by
the Bankruptcy Code.

　　　(c)  *Priority Tax Claims*.  On the later of (i) the
Effective Date or (ii) the date on which its Priority Tax Claim
becomes an Allowed Priority Tax Claim, each Holder of an Allowed
Priority Tax Claim shall receive, in full and final

-16-

{10360275:8}

satisfaction, settlement, release, and discharge of, and in exchange for such Allowed Priority Tax Claim, at the sole discretion of the Debtor, (x) Cash equal to the unpaid portion of such Allowed Priority Tax Claim, (y) treatment in any other manner such that its Allowed Priority Tax Claim shall not be impaired pursuant to section 1124 of the Bankruptcy Code, including payment in accordance with the provisions of section 1129(a)(9)(C) of the Bankruptcy Code, or (z) such other treatment as to which the Debtor and such holder shall have agreed upon in writing.

(d)   *Non-Tax Priority Claims*.   On the Effective Date, if such Non-Tax Priority Claim is an Allowed Non-Tax Priority Claim on the Effective Date or as soon as practicable after the date such Non-Tax Priority Claim becomes an Allowed Non-Tax Priority Claim, the holder of an Allowed Non-Tax Priority Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Non-Tax Priority Claim, (x) Cash equal to the unpaid portion of such Allowed Non-Tax Priority Claim or (y) such other treatment as to which the Debtor and such Holder shall have agreed upon in writing.

(e)   *Section 502(f) Creditor Claims*.   On the Effective Date, each Holder of an Allowed Class Section 502(f) Creditor Claim, except section 502(f) administrative claims subject to section 348(d) of the Bankruptcy Code, shall receive, in full

-17-

and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Section 502(f) Creditor Claim, in accordance with Section 502(f) of the Bankruptcy Code, the payment of such Holder's Allowed Section 502(f) Creditor Claim in full, in Cash, except to the extent the Bankruptcy Court issues an Order authorizing the Debtor to pay Claimants prior thereto.

3.2   *Impaired Classes of Claims* (class 1 is entitled to vote on the Plan)

(a)   *Class 1 Secured Claims*.   On the Effective Date, the Class 1 Creditor shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for such Allowed Claim in the principal amount of $15,882,930.56 (i) payment of $1,000,000.00 in Cash to Textron, as agent under the Credit Agreement, (ii) a $9,000,000.00 note pursuant to an amended and restated Credit Agreement and amended and restated related security documents, to evidence a first priority security interest in all the assets of the Reorganized Debtor, subject only to certain permitted liens; and (iii) a warrant from the Reorganized Debtor with the right to purchase up to twenty-five (25%) percent of the Reorganized Debtor's new Equity Interests.

(b)   *Class 2 General Unsecured Claims*.   The holders of Class 2 General Unsecured Claims shall not receive or retain any

-18-

property under the Plan on account of such General Unsecured
Claim and all Class 2 General Unsecured Claims shall be
discharged as of the Effective Date.

3.3   Impaired Classes of Interests (deemed to have rejected
the Plan and, therefore, not entitled to vote on the Plan).

(a)   *Class 3 Preferred Equity Interests*.   On the Effective
Date, all Class 3 Preferred Equity Interests shall be deemed
cancelled and extinguished.

(b)   *Class 4 Equity Interests*.   On the Effective Date, all
Class 4 Equity Interests shall be deemed cancelled and
extinguished.

## ARTICLE 4

## IMPLEMENTATION OF THE PLAN

4.1   Means of Implementing the Plan.   The Debtor intends to
implement the Plan with funds generated from the operation of
its businesses.

4.2   Right to Object to and Settle Claims.   The Debtor
shall have the right to file objections to Claims within such
time as provided in the Confirmation Order.   The Debtor may
settle any Disputed Claim and such Disputed Claim shall become
an Allowed Claim upon entry of a Final Order approving such
settlement.

4.3   Distributions.   Distributions to holders of Allowed
Claims shall be made by the Disbursing Agent (a) at the

-19-

addresses set forth on the proofs of claim filed by such

Claimholder (or at the last known address of such Claimholder if

no proof of claim is filed or if the Debtor has been notified in

writing of a change of address), (b) at the addresses set forth

in any written notices of address change delivered to the

Disbursing Agent after the date of any related proof of claim,

or (c) at the address reflected in the Schedules if no proof of

claim has been filed and the Disbursing Agent has not received a

written notice of a change of address.  If any Claimholder's

distribution is returned as undeliverable, no further

distributions to such Claimholder shall be made unless and until

the Disbursing Agent is notified of such Claimholder's then

current address, at which time any missed distribution shall be

made to such Claimholder without interest.  Amounts in respect

of undeliverable distributions shall be returned to the

Reorganized Debtor until such distributions are claimed.  All

claims for undeliverable distributions shall be made on or

before the first anniversary of the Effective Date.  After such

date, all unclaimed property shall revert to the Reorganized

Debtor and the holder of the Claim otherwise entitled to such

distribution shall be deemed to have forfeited its Claim for

such unclaimed distribution and shall be forever barred and

enjoined from asserting any claim for such distribution against

the Debtor, the Reorganized Debtor and its property,

notwithstanding any federal or state escheat laws to the
contrary.

## ARTICLE 5

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.1  <u>Rejected Contracts and Leases</u>.  Pursuant to sections
365 and 1123(b)(2) of the Bankruptcy Code and any applicable
Federal Rule of Bankruptcy Procedure except as otherwise
provided in the Confirmation Order or the Plan, all prepetition
executory contracts and unexpired leases to which the Debtor is
a party, to the extent such contracts or leases are executory
contracts or unexpired leases, shall be deemed rejected on and
subject to the occurrence of the Effective Date, unless such
contract or lease (a) previously shall have been assumed,
assumed and assigned, or rejected by the Debtor, (b) previously
shall have expired or terminated pursuant to its own term before
the Effective Date, (c) is subject of a pending motion to assume
or reject on the Confirmation Date, or (d) is identified in
Exhibit "A" to the Plan, together with the proposed Cure (the
"Proposed Cure") as a contract or lease to be assumed (the
"Assumed Contract Exhibit"), provided, however, that the Debtor
may amend the Assumed Contract Exhibit at any time prior to the
Confirmation Date.

5.2  <u>Payments Related to Assumption of Executory Contracts
and Unexpired Leases</u>.  Any Person who disputes the Proposed Cure

-21-

must file with the Bankruptcy Court an objection (a "Cure Claim
Objection") to the Proposed Cure no later than thirty (30) days
after the filing of the Assumed Contract Exhibit (the "Cure
Claim Objection Deadline").  Any party failing to submit a Cure
Claim Objection by the Cure Claim Objection Deadline shall be
forever barred from asserting, collecting, or seeking to collect
any amounts in excess of the Proposed Cure against the Debtor or
the Reorganized Debtor.  Any Cure Claim Objection shall be
resolved consensually by the parties, by the Bankruptcy Court or
at the mutual election of the parties in any non-Bankruptcy
forum.  Cure Claims Objections shall be set for status at
subsequent hearings following the Cure Claims Objection Deadline
with separate evidentiary hearings to be set by the Bankruptcy
Court as needed.  If the Debtor does not receive a Cure Claim
Objection by the Cure Claims Objection Deadline, then the Debtor
shall pay the Proposed Cure, if any, within five (5) Business
Days of the Cure Claims Objection Deadline.  No later than such
date, the Debtor also will pay the undisputed portion of Cure to
any party who filed a Cure Claims Objection.  In the event of a
dispute regarding (a) the nature or the amount of any Cure, (b)
the ability of the Reorganized Debtor or any assignee to provide
"adequate assurance of future performance" (within the meaning
of section 365(b) of the Bankruptcy Code) under the contract or
lease to be assumed, or (c) any other matter pertaining to

-22-

assumption, Cure shall be paid by the Debtor as soon as practicable after such agreement or Final Order.

## ARTICLE 6

### ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS

6.1  Professional Claims.

(a)  *Fee Applications*.  All requests for payment of Professional Claims must be filed no later than thirty (30) calendar days after the Effective Date.  The deadline to file requests for payment of Professional Claims may be extended by the Bankruptcy Court upon a motion by a Professional.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court, the allowed amounts of such Professional Claims shall be determined by the Bankruptcy Court.

(b)  *Payment of Professional Claims*.  After the Bankruptcy Court has entered an order authorizing a Professional's request for payment of its Professional Claim, the Reorganized Debtor shall make payment on account of such request approved by the Bankruptcy Court.

(c)  *Terminating Fee Application Requirements*.  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 363 of the Bankruptcy Code in seeking retention or compensation for services rendered after the Effective Date shall terminate.

-23-

6.2  <u>Other Administrative Claims</u>.  All other requests for payment of an Administrative Claim (other than as set forth in Section 6.1 of the Plan) must be filed with the Bankruptcy Court and served on counsel for the Debtor, the Reorganized Debtor, the Creditors' Committee, Textron, and the DIP Lender no later than the Administrative Claims Bar Date.  Unless the Debtor, the Reorganized Debtor, the Creditors' Committee, Textron, or the DIP Lender objects to an Administrative Claim within twenty (20) calendar days after the Administrative Claims Bar Date, such Administrative Claim shall be deemed allowed in the amount requested.  In the event that the Debtor, the Reorganized Debtor, the Creditors' Committee, Textron, or the DIP Lender object to an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to an Administrative Claim which is paid or payable by the Debtor in the ordinary course of business on ordinary and typical business terms.  The deadline to file an objection to an Administrative Claim may be extended by the Bankruptcy Court upon motion by the Debtor, the Reorganized Debtor, the Creditors' Committee, Textron, or the DIP Lenders.

{10360275:8}

## ARTICLE 7

### EFFECT OF THE PLAN

7.1  Releases.

(a)  *Releases By The Debtor*.  Unless otherwise provided herein or in the Confirmation Order, as of the Effective Date, the Debtor (as debtor in possession), for and on behalf of the Estate, for good and valuable consideration, the adequacy of which is hereby confirmed, will be deemed to release forever, waive, and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are based in whole or part on any act omission, transaction, event, or other occurrences taking place on or prior to the Effective Date in any manner arising from, based on or related to, in whole or in part, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Equity Interests prior to or in the Case or any act, omission, occurrence or event in any manner related to any such Claim, Equity Interest or restructuring or the Case that could have been asserted by or on

-25-

behalf of the Debtor, the Estate, or the Reorganized Debtor, against the Released Parties.

(b) *Releases By Holders Of Claims And Equity Interests*. On the Effective Date, each Holder of an Impaired Claim, that voted to accept the Plan or receives a Distribution, in consideration for the obligations of the Debtor and the Reorganized Debtor under the Plan and the Cash and other contracts, instruments, releases, agreements, or documents to be delivered in connection with the Plan, shall be deemed to forever release, waive, and discharge all claims, demands, debts, rights, causes of action, or liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are based in whole or in part on any act or omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Case, the Plan, or the Disclosure Statement, in any such case, against the Released Parties.

(c) *Injunction Related To Releases*. The satisfaction, releases and discharge pursuant to this Article 7 of the Plan shall also act as an injunction against any Person commencing or continuing any action, employment of process or act to collect, offset, recoup or recover any Claim or Cause of Action

-26-

satisfied, released, or discharged under the Plan to the fullest
extent authorized or provided by the Bankruptcy Code, including
without limitation, to the extent provided for or authorized by
sections 524 and 1141 of the Bankruptcy Code.

    7.2   Exculpation And Limitation Of Liability.   To the
maximum extent permitted by section 1126 of the Bankruptcy Code,
none of the Released Parties shall not have or incur any
liability to, or be subject to any right of action by, any
Holder of a Claim or an Equity Interest, or any other party in
interest, or any of their respective agents, employees,
representatives, financial advisors, attorneys, or agents acting
in such capacity, or affiliates, or any of their successors or
assigns, for any act or omission in connection with, relating
to, or arising out of, the Case, the pursuit of confirmation of
the Plan, the consummation of the Plan, the administration of
the Plan or the property to be distributed under the Plan,
except for any act or omission to the extent that such act or
omission is determined in a Final Order to have constituted
gross negligence or willful misconduct, and in all respects
shall be entitled to reasonably rely upon the advice of counsel
with respect to their duties and responsibilities under the
Plan.

    7.3   Injunction.   The satisfaction, releases, and discharge
pursuant to Article 7 of the Plan shall also act as an

-27-

injunction against any Person commencing or continuing any
action, employment of process to act to collect, offset, recoup
or recover any Claim or Cause of Action satisfied, released or
discharged under the Plan to the fullest extent authorized or
provided by the Bankruptcy Code, including, without limitation,
to the extent provided for or authorized by sections 524 and
1141 thereof.

7.4   Discharge of Claims.   Pursuant to section 1141(d) of
the Bankruptcy Code, except as otherwise specifically provided
in the Plan or in the Confirmation Order, the distributions and
rights that are provided for in the Plan shall be in exchange
for and in complete satisfaction, discharge and release,
effective as of the Effective Date, of Claims and Causes of
Action (whether known or unknown) against, liabilities of, liens
on, obligations of and Equity Interests in the Debtor or the
Reorganized Debtor or any of its assets or properties,
regardless of whether any property shall have been distributed
or retained pursuant to the Plan on account of such Claims,
including, but not limited to, demands and liabilities that
arose on or before the Effective Date, any liability (including
withdrawal liability) to the extent such Claims relate to
services performed by employees of the Debtor prior to the
Petition Date and that arise from a termination of employment or
a termination of any employee or retiree benefit program

-28-

regardless of whether such termination occurred prior to or
after the Petition Date and all debts of the kind specified in
sections (502)g, 502(h) or 502(i) of the Bankruptcy Code,
whether or not (a) a proof of claim based upon such debt is
filed or deemed filed under section 501 of the Bankruptcy Code,
(b) a Claim based upon such debt is Allowed under section 502 of
the Bankruptcy Code or (c) the Claimholder of such a claim
accepted the Plan.  The Confirmation Order shall be a judicial
determination of the discharge of all liabilities of the Debtor,
subject to the Effective Date occurring.

### ARTICLE 8

### CONDITIONS TO CONFIRMATION
### OF PLAN AND TO EFFECTIVE DATE

8.1  <u>Conditions to Confirmation</u>.  Confirmation of this Plan
shall not occur unless each and every one of the conditions set
forth in this paragraph 8.1 has either been satisfied or waived
in accordance with paragraph 8.3.

a. The Confirmation Order shall be reasonably
acceptable in form and substance to the Debtor,
Textron, and the DIP Lender; and

b.  The Bankruptcy Court shall have approved
by Final Order a Disclosure Statement with respect to
the Plan reasonably acceptable in form and substance
to the Debtor, Textron, and the DIP Lender.

-29-

8.2   <u>Conditions to Effective Date</u>. Notwithstanding other
provisions of this Plan or the Confirmation Order, the Effective
Date shall not occur unless the Confirmation Order, in form and
substance reasonably satisfactory to the Debtor, Textron and the
DIP Lender shall have been entered and shall be a Final Order or
has been either satisfied or waived in accordance with paragraph
8.3.

8.3   <u>Waiver of Conditions</u>.   If any of the conditions to
confirmation of this Plan or conditions to the occurrence of the
Effective Date set forth in paragraphs 8.1 and 8.2,
respectively, have not been or cannot be satisfied as of the
time established under this Plan for the satisfaction of such
conditions, then the Debtor, Textron, and the DIP Lender in the
exercise their reasonable discretion may collectively waive any
such condition.

## ARTICLE 9

## MISCELLANEOUS PROVISIONS

9.1   <u>Term Of Bankruptcy Injunction Or Stays</u>.   Unless
otherwise provided herein or in the Confirmation Order, all
injunctions or stays provided for in the Chapter 11 Case under
sections 105 or 362 of the Bankruptcy Code, or otherwise, and in
existence on the Confirmation Date, shall remain in full force
and effect until the Effective Date.

{10360275:8}

9.2   Entire Agreement.   This Plan and the Confirmation
Order set forth the entire agreement and understanding among the
Debtor and each of its creditors relating to the subject matter
hereof and supersedes all prior discussions and documents.

9.3   Section Headings/Entire Plan.   The section headings
contained in the Plan are inserted for convenience only and
shall not affect in any way the meaning or interpretation of the
Plan.   This Plan shall constitute the entire Plan.

9.4   Payment of Statutory Fees.   All fees payable pursuant
to section 1930 of title 28 of the United States Code, as
determined by the Bankruptcy Court at the Confirmation Hearing,
shall be paid on the Effective Date.

## ARTICLE 10

## RETENTION OF JURISDICTION

The Court shall have exclusive jurisdiction of matters
arising out of the Case and the Plan pursuant to sections
105(a), 1127 and 1142(b) of the Bankruptcy Code for the
following purposes:

a.   To determine any and all objections to Claims
pending as of or initiated after the Confirmation
Date;

b.   To hear and determine any and all
controversies, suits and disputes that may arise in

-31-

connection with the interpretation or enforcement of this Plan or the Confirmation Order;

c.   To determine any and all applications for allowance of compensation or reimbursement of expenses as provided for herein for professional services and expenses in accordance with the provisions hereof;

d.   To determine any and all motions to assume, reject or assign an executory contract or unexpired lease, and determine and fix all claims that may arise in respect of the assumption, rejection, assignment or termination of any executory contract or unexpired lease pursuant to this Plan;

e.   To determine any and all applications, adversary proceedings and contested and litigated matters pending as of Confirmation Date;

f.   To enforce and administer the provisions of the Plan, and to enter and implement such orders as may be appropriate in the event that the Confirmation Order is stayed, reversed, revoked or vacated for any reason;

g.   To consider any modification of this Plan under section 1127 of the Bankruptcy Code;

h.   To correct any defect, cure any omission or reconcile any inconsistency in the Plan or

Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

    i.   To enforce all orders, judgments, injunctions and rulings entered in connection with the Case and to enter such orders as may be necessary or appropriate in aid of confirmation and to facilitate implementation of the Plan;

    j.   To hear and determine all controversies as provided in the Confirmation Order;

    k.   To hear and determine matters concerning state, local and federal taxes in accordance with sections 105, 346, 505 and 1146 of the Bankruptcy Code;

    l.   To hear and determine any action or proceeding brought by the Debtor under sections 329, 542, 543, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code, whether such action or proceeding is brought before or after the Confirmation Date;

    m.   To determine the validity, extent and priority of all Claims and Liens against Assets, Other Assets and the proceeds of all of the foregoing;

    n.   To enforce any injunction incorporated or set forth in this Plan; and,

-33-

o.    To enforce the rights and remedies of the Debtor under this Plan.

## ARTICLE 11

### SUBSTANTIAL CONSUMMATION

The Plan shall be "substantially consummated", within the meaning of sections 1101(2) and 1127(b) of the Bankruptcy Code on the Effective Date.

## ARTICLE 12

### RESERVATION OF RIGHTS

In the event that this Plan is not confirmed, the rights of all parties-in-interest in the Chapter 11 Case shall be reserved in full.

Dated: New York, New York
       October 19, 2006

                        **SOURCE ENTERPRISES, INC.,**
                        **Debtor-in-Possession**

                        **By: /s/ Jeremy Miller**
                            **Jeremy Miller, President**

-34-

{10360275:8}