**Minutes of Proceedings**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------------------x
Date: July 31, 2007                                                                         :
-------------------------------------------------------------------------------------------x
In re                                                                                       :
Source Enterprises, Inc.,                                                                   :           Case No.
                                            Debtors.                         :           06-11707 (AJG)
                                                                                            :
                                                                                            :           (Jointly Administered)
                                                                                            :
                                                                                            :
-------------------------------------------------------------------------------------------x

Present: <u>Hon. Arthur J. Gonzalez</u>         <u>Jacqueline De Pierola</u>        <u>ECRO</u>
        Bankruptcy Judge                       Courtroom Deputy                  Court Reporter

**Proceeding:**   Opinion on Debtors' Motion for (1) final approval of the Disclosure Statement and Plan Summary and (2) Confirmation of the Plan.

**Order:**   For the reasons set forth in Exhibit A, attached hereto, the relief sought is

      ___ Granted        **X** Denied

FOR THE COURT: Kathleen Farrell, Clerk of the Court

BY THE COURT:

**s/Arthur J. Gonzalez**              7/31/07            s/Jacqueline De Pierola
United States Bankruptcy Judge        Date                Courtroom Deputy

Exhibit A

Based on a review of the Debtors' June 6, 2007 *ex parte* motion, the Court determines that it was wrong to conditionally approve the Debtors' Disclosure Statement. Had the supplemental materials, submitted thereafter, been included in the Disclosure Statement at the time of the Debtors' *ex parte* motion, creditors would have received the materials and been able to consider them in advance of voting. The Court would have been in a better position, in such case, to conditionally approve the Disclosure Statement as containing adequate information. Moreover, given that the motion was *ex parte*, in that it was not served on all parties in interest (although some parties in interest were served including the Creditors' Committee (the "Committee"), the US Trustee, the DIP Lenders and Textron and others may also have had actual notice), there was not sufficient opportunity under the circumstances for creditors to evaluate the adequacy of the disclosures prior to the Court's conditional approval. While no objections were raised with respect to the combined process, nonetheless, upon review as stated above, conditional approval was not warranted. Although a denial of the relief herein will result in added costs to the Debtors to resolicit, the Debtors proceeded at their own risk and must have been aware of such risks.

By way of background, as referenced above, on June 6, 2007 the Debtors filed a motion seeking entry of an *ex parte* order conditionally approving a Disclosure Statement, fixing a voting deadline of July 16, 2007 (the "Voting Deadline") and scheduling a combined hearing to consider final approval of the Disclosure Statement and confirmation of the Plan on July 26, 2007, among other relief. The motion stated that the Debtors anticipated that the Committee, the US Trustee, the DIP Lenders and Textron

1

would not contest the relief sought and in fact they did not. It was contemplated that the material documents "may be amended and modified to incorporate immaterial modifications, fill in blanks and reflect any modifications . . . which do not materially change the substantive disclosure provided by either document or materially affect any rights of a party in interest. *Amended Ex parte Order* at I. In fact, an amended Disclosure Statement, Plan and Plan Summary were filed on June 15, 2007 and these amended documents, among others, were included in the solicitation packages that were mailed to creditors on June 18, 2007. The packages also included a letter from the Chair of the Committee encouraging parties to vote to accept the Plan as well as a ballot with notice of the Voting Deadline.

A variety of relevant documents were filed by the Debtors after the Voting Deadline. As such creditors were not able to consider the information included in these documents in determining whether to vote in favor of or against the Plan. These documents included a "Plan Supplement" filed on July 23, 2007 which included the Debtors' "Five Year Projections", a "Schedule of the Sources and Uses of Funds" and disclosures about the make-up of and compensation to be paid to the Reorganized Debtors' board and management. Additionally, a "First Augmentation of Plan Supplement" was filed on July 25, 2007 setting forth a list of 15 additional parties, causes of action against whom would not vest with the Source Creditors' Trust. As the Debtors stated therein, these parties were those "whose goodwill towards Source, Source believes, will promote Source's financial rehabilitation and, thus, should never be the subject of any legal action by the Committee." While these submissions did not necessarily materially alter the disclosures made in the Disclosure Statement they certainly provided

amplification of the Debtors' financial circumstances that was necessary to provide adequate information. These additional submissions were material and not of an incidental nature as the Court was led to believe would be forthcoming.

After solicitation packages were sent to creditors other documents were filed including the July 13, 2007 "Reservation of Rights"[1] which stated, in relevant part, that

"[t]he Debtors and Committee are currently discussing the list of third parties, against whom claims will not be transferred to the Source Creditors' Trust. Though the Committee supports the Plan, it does have an obligation to investigate the financial affairs of the Debtors and possible causes of action. Towards this end, the Committee has requested information from the Debtors regarding the purpose and scope of these third party releases. The Committee reserves its right to object to the Disclosure Statement and/or confirmation of the Plan, and its right to seek an adjournment of the hearing on both, as it conducts its due diligence." *Reservation of Rights* at para.12.

Additionally, on July 24, 2007, eight days after the Voting Deadline, the Committee's financial advisor, Weiser, LLP, filed an affidavit and exhibit titled "Report on Valuation of a 100% Equity Interest and Alternate Recovery to Unsecured Creditors – Outside of Current Proposed Plan of Reorganization, As of July 20, 2007" (such report, the "Horgan Report"). Neither the Reservation of Rights nor the Horgan Report was incorporated in the Disclosure Statement and thus were not part of the disclosures considered by voting creditors. To suggest that voters did not need the amplified materials because the Committee approved the terms of the Plan is a "no harm, no foul" approach, inappropriate in determining adequacy of disclosure. Moreover, the

---

[1] The Reservation of Rights was filed electronically three days prior to the Voting Deadline. It is unlikely creditors were aware of this filing as it was not included in the solicitation packages.

3

Reservation of Rights and the Horgan Report, both filed after solicitation and, in the case of the Horgan Report, after the Voting Deadline, show that at the time of solicitation, the Committee had not completed its own due diligence and the creditor body was not advised of that fact.

Adequate Information

Section 1125 of the Bankruptcy Code mandates that before creditors may be solicited to vote on a chapter 11 plan, the plan proponent file a disclosure statement that provides adequate information to holders of claims and interests so they can make a decision as to whether or not to vote in favor of the plan. "Adequate Information" is "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor . . . to make an informed judgment about the plan." 11 U.S.C. 1125.

*In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988) lists factors which Bankruptcy Courts have used to evaluate the sufficiency of disclosures including, among others, ". . . (2) a complete description of the available assets and their value; . . . (9) the accounting and valuation methods used to produce the financial information in the disclosure statement; (10) information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors and/or officers of the debtor; . . . (13) the collectibility of any accounts receivable; (14) any financial information, valuations or *pro forma* projections that would be relevant to creditors' determinations of whether to accept or reject the plan; . . . (16) the actual or projected value that can be obtained from avoidable transfers; . . ."

4

Here, the question is whether, under the circumstances of this case, the Disclosure Statement was adequate with respect to valuation, third party releases and the Source Creditors' Trust.

1. Valuation

The Disclosure Statement provides, in discussing the Best Interest of Creditors Test, that

"[The value of the Debtors] is still less than the Debtors' secured obligations to the DIP Lender and Textron. In fact, the value of the assets (trademarks, licenses and other intellectual property) is unknown. The Debtors have not spent their resources obtaining a valuation of their assets and there is no business reason to do so. The parties with a vested interest in valuing the Debtors' assets, the Committee and Textron, recognize that the treatment they are to receive under the plan in respect of their and/or their constituents' Claims is fair and equitable and consistent with their understanding of the value of the assets, which are business assets, as they are used in the operation of the Debtors' enterprise, as evidenced by such parties' entry into the Plan Agreement . . . [d]espite the absence of certainty as to the value of the Debtors' assets, no one can dispute that the value of the assets does not exceed the combined amount outstanding under the DIP Credit Facility and Textron's Claim." *Disclosure Statement* at 41.

Whether or not creditors will be "out of the money," whether or not additional valuation information would result in a different vote or whether or not a creditors' committee has put their support behind a plan is not determinative of adequate disclosure. A creditor is entitled, prior to voting on a plan, to information about a debtor's financial status. Here, the information included in the Plan Supplement and First Augmentation

5

was relevant to creditors and should have been provided prior to the Voting Deadline. Creditors should have been provided with the Debtors' projections as well as an enhanced explanation as to the Debtors' intangibles and why such assets were not being independently valued (for example, the offers or lack thereof for such assets).[2] With respect to valuation, the Court finds that it is not a matter of a lack of due diligence on the part of the Debtors or the Committee but rather a matter of timely disclosing the diligence performed. Such disclosures would, along with the fact that the secured creditors were compromising their claim, provide adequate information regarding the Debtors' valuation.

    2.    Third Party Releases

An expanded explanation of the Metromedia justification for the third party releases (similar to that set forth by the Debtors in their Memorandum of Law in Support) is required.

    3.    Source Creditors' Trust

An explanation of the collectibility of accounts receivable and potential causes of action (and defenses thereto), including preference actions, vesting in the Source Creditors' Trust should be included in the Disclosure Statement as well as a discussion of how such value relates to the $400,000 set aside to litigate such actions.

In conclusion, upon review of the submissions of the parties and having held a hearing on the matter, the Court finds that the Disclosure Statement dated June 15, 2007

---

[2] The Court notes that the Debtor stated in its Memorandum of Law in Support at page 47 that "the Committee capitalized on the marketing efforts for the Debtors' intellectual property assets that had been the subject of various foreclosure sales scheduled prior to the commencement of the Debtors' bankruptcy cases. In this regard, the Committee contacted the various parties who had appeared as bidders at such foreclosure sales to solicit their interest in sponsoring a Chapter 11 plan and none expressed any serious interest in doing so."

did not provide adequate information upon which a hypothetical investor could make an informed judgment about the Plan. The Debtors are therefore instructed to amend the Disclosure Statement and, if approved, re-solicit votes thereon. Contemplated amendments would include, among others, incorporating the Plan Supplement and First Augmentation thereto into the Disclosure Statement and making additional disclosures regarding the reasons for not valuing the Debtors' intangible assets and regarding the causes of action being vested in the Source Creditors' Trust and their value in relation to the $400,000 set aside to litigate such actions. Finally, the Disclosure Statement should reflect the <u>Metromedia</u> factors used to support the third party releases. Upon making these additional disclosures the Court will set a period of time for pleadings concerning the adequacy of the amended disclosures. Upon review of such, the Court will determine whether a hearing is required.