**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| SOURCE ENTERPRISES, INC., et al., | : Case No. 06-11707 (AJG) |
| | : |
| Debtors.[1] | : (Jointly Administered) |
| | : |

-----------------------------------------------------------------x

## ORDER CONFIRMING THE DEBTORS' FOURTH AMENDED PLAN OF REORGANIZATION, DATED AUGUST 22, 2007, UNDER BANKRUPTCY CODE SECTION 1129 AND BANKRUPTCY RULE 3020

---

[1] The Debtors, collectively, are the following entities: (1) Source Enterprises, Inc., a Delaware corporation ("Enterprises"), (2) Source Entertainment, Inc., a Delaware corporation ("Entertainment"), (3) Source Magazine, LLC, a New York company ("Magazine") and each of the following entities and pseudonyms by which any or all of Enterprises, Entertainment and/or Magazine have been known, including (4) Source Entertainment, LLC, a California company, (5) Source Holdings LLC, a Delaware company, (6) Source Merchandising LLC, a New York company, (7) The Source.com, LLC, a New York company, (8) Source Sound Lab, LLC, a Delaware company, (9) Source Music, LLC, a New York company, (10) Source Broadcast Media, LLC, a New York company, (11) The Source, (12) Source Publications, Inc., (13) Source Magazine, (14) The Source Magazine, (15) The Source Awards, (16) Hip-Hop Hits, (17) Source Sports, (18) Unsigned Hype LLC, and (19) Source Media and Merchandising, Inc.

## RECITALS

a.      Enterprises' bankruptcy case was commenced by the filing by three of its

creditors of an involuntary petition for relief under Chapter 7 of Title 11 of the United States

Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), on July 27, 2006.  The Chapter 7 case

was converted by Court order to a case under Chapter 11 of the Bankruptcy Code on September

21, 2006.  The Debtors other than Enterprises commenced their cases by filing voluntary

petitions for relief under Chapter 11 of the Bankruptcy Code on April 27, 2007, commencing the

above-captioned jointly administered bankruptcy cases.

b.      Pursuant to its authority under Section 1102 of the Bankruptcy Code, the

U.S. Trustee appointed the Committee on September 26, 2006.

c.      Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the

Debtors continue to operate and manage their businesses as debtors-in-possession.

d.      On May 8, 2007, the Bankruptcy Court entered the Debtors' Motion for

Joint Administration and Procedural Consolidation of Cases Pursuant to Bankruptcy Rule

1015(b), pursuant to which the Court ordered that the Debtors' cases would be administered

jointly.   On May 11, 2007, the Bankruptcy Court entered an order that virtually all of the

substantive orders entered in Enterprises' case, including those authorizing Enterprises' retention

and employment of professionals, be deemed to apply to Entertainment and Magazine and in

their cases.

e.      On October 19, 2006, Enterprises filed its original proposed plan of

reorganization and accompanying disclosure statement.  The U.S. Trustee and the Committee

both filed objections to the plan and disclosure statement, including on the grounds that it

provided no recovery whatsoever for the benefit of general unsecured creditors.  Subsequently,

following the retention of Curtis, Mallet-Prevost, Colt & Mosle LLP as Enterprises' bankruptcy

counsel, Enterprises and certain parties in interest commenced to negotiate, and ultimately

entered into, an agreement (the "*Plan Agreement*") which provided the basis for the Debtors'

joint Fourth Amended Plan of Reorganization of the Source Debtors, dated August 22, 2007 (as

it may be supplemented or modified, the "*Plan*") and the related Disclosure Statement With

Respect to the Fourth Amended Plan of Reorganization of the Source Debtors, dated August 22,

2007 (as it may be supplemented or modified, the "*Disclosure Statement*") under Section 1127(a)

of the Bankruptcy Code.[2]  The Plan and Disclosure Statement supersede all versions of the plan

and disclosure statement that the Debtors have previously filed in these cases, including, without

limitation, the respective documents filed on August 17, 2007, August 20, 2007, and June 15,

2007 (the "*Third Amended Disclosure Statement*").

      f.      After entering into the Plan Agreement, the Debtors, with the support of the

Committee, had sought to expedite the confirmation process by obtaining preliminary approval

of their Third Amended Disclosure Statement and accompanying plan summary, allowing them

to solicit votes for and against their Chapter 11 plan before final approval of the disclosure

statement had been granted, then presenting at a combined hearing their motion for final

approval of the disclosure statement and confirmation of their Chapter 11 plan.  This expedited

procedure was initially approved by the Court by order entered June 6, 2007, which set the

combined hearing to commence on July 26, 2007.  Subsequently, certain parties in interest filed

objections to the Debtors' disclosure statement plan and, following the hearing on July 26, 2007,

the Bankruptcy Court held on July 30, 2007, that the Third Amended Disclosure Statement did

not provide "adequate information" to parties in interest in accordance with Section 1125 of the

Bankruptcy Code.  Accordingly, the Debtors revised their disclosure statement to include certain

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

3767776

additional information that had been filed in plan supplements, including several of the various

exhibits that are annexed to the Disclosure Statement.

g.      Following a hearing in the Debtors' bankruptcy cases on August 21, 2007,

and the Debtors having filed the Plan and Disclosure Statement on August 22, 2007, the

Bankruptcy Court on August 23, 2007, entered an order approving the Disclosure Statement and

related solicitation procedures and deadlines that are set forth therein (the "*Disclosure Order*").

Among other things, the Disclosure Order set Confirmation Hearing to commence on September

27, 2007.

h.      The Court has granted three extensions of Enterprises' plan exclusivity.  By

order entered March 7, 2007, the Court extended Enterprises' plan exclusivity, pursuant to

Section 1121(d) of the Bankruptcy Code, through June 18, 2007.  Enterprises' plan exclusivity

was further extended through August 13, 2007, by order entered June 13, 2007, and Enterprises'

plan exclusivity was further extended, by order entered on August 22, 2007, from August 13,

2007, through 5:00 p.m. on the third business day after the date that the Court's order in respect

of the Confirmation Hearing is entered on the Court's docket at which point it shall terminate

unless otherwise extended by an order of the Court.

i.      In accordance with the Disclosure Order, the Debtors caused the

Solicitation Packages, including the Plan and Disclosure Statement (or Plan Summary, in the

case of the Subscribers) to be served on August 27, 2007 upon all holders of Claims and

Interests.

j.      Two non-debtor parties, Northstar Marketing Group, Inc. ("*Northstar*") and

BE/GS, duly disclosed prior to the Confirmation Hearing the existence of their term-sheet (the

"*Northstar Term Sheet*") concerning a contemplated transaction (the "*Northstar-BE/GS*

*Agreement*") pursuant to which Northstar would have the right, after the Effective Date, to

-4-

3767776

purchase from BE/GS a portion of the equity of the Reorganized Debtor that BE/GS is to receive under the Plan. The Northstar Term Sheet does not alter any terms or provisions of the Plan and it does not affect the treatment of any Claims or Interests under the Plan.

k.     On September 26, 2007, the Debtors filed their Memorandum of Law in Support of Confirmation of the Source Debtors' Fourth Amended Plan of Reorganization Dated August 22, 2007 and Response to Objections (the "*Plan Confirmation Memorandum*") together with the following declarations in support of confirmation of the Plan (the "*Plan Support Declarations*"):  (i) Jeremy Miller, the Debtors' Chief Executive Officer (the "*Miller Declaration*"), (ii) David Berliner, a principal of BDO Seidman LLP, the Debtors' financial advisors (the "*Berliner Declaration*"), and (iii) Jeffrey C. Scott, a principal of BE/GS (a/k/a the DIP Lender) (the "*Scott Declaration*").  Additionally, the Debtors rely on the affidavit of James Katchadurian, a Vice President and Senior Consultant of Epiq Bankruptcy Solutions, LLC (f/k/a Bankruptcy Services LLC), the Debtors' claims, noticing and balloting agent (the "*Epiq Affidavit*"), as to the voting results.

l.     On September 26, 2007, the Committee filed the Official Committee of Unsecured Creditors' Statement in Support of Confirmation of the Fourth Amended Plan of Reorganization of the Source Debtors.

m.     Two objections to confirmation of the Plan were filed, one by Windels Marx Lane & Mittendorf, LLP, dated September 24, 2007 (the "*Windels Marx Objection*"), and one by David Mays, dated September 24, 2007 (the "*Mays Objection*" and, collectively, with the Windels Marx Objection, the "*Objections*").  Concerns with respect to the Plan were informally raised by the Internal Revenue Service (the "*IRS*") and resolved on the terms described by the Debtors' counsel at the Confirmation Hearing and effectuated hereby.

3767776

n.    The Confirmation Hearing was held before this Court on September 27, 2007.

o.    This Court has reviewed the Plan, the Disclosure Statement and Plan Summary, the Plan Confirmation Memorandum and Plan Support Declarations, the filings by the Committee, the Objections and all filed pleadings, exhibits, statements and comments regarding confirmation of the Plan.

p.    This Court has heard the statements of counsel in respect of the Confirmation Hearing and considered all testimony, proffers, documents and declarations offered in support of confirmation of the Plan, and this Court has considered and overruled the Objections, as highlighted in "Exhibit A" attached hereto.

q.    After due deliberation and good cause appearing therefor, this Court hereby makes and issues the following Findings of Facts, Conclusions of Law and Order.[3]

## I.
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.    The Recitals.  Each of the foregoing recitals constitutes a finding of fact of this Court.

B.    The Debtors.  On July 27, 2006 (the "Enterprises Petition Date"), three creditors of Enterprises filed an involuntary Chapter 7 petition against Enterprises under Section 303 of the Bankruptcy Code.  On August 21, 2006, Enterprises moved the Bankruptcy Court for an order converting the involuntary Chapter 7 case to a case under Chapter 11 of the Bankruptcy Code (the "Conversion Motion").  The Bankruptcy Court granted the Conversion Motion at the hearing on September 20, 2006, and the order, constituting the order for relief in Enterprises'

---

[3] This Confirmation Order constitutes findings of fact and conclusions of law under Fed. R. Civ. P. 52, as made applicable by Bankruptcy Rules 7052 and 9014.  Any and all findings of fact shall constitute findings of fact even if they are stated as conclusions of law, and any and all conclusions of law shall constitute conclusions of law even if they are stated as findings of fact.

3767776

case, was entered on September 21, 2006.  The Debtors other than Enterprises commenced their

Chapter 11 Cases by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy

Code on April 27, 2007 (the "Voluntary Petition Date").  By Order entered May 8, 2007, the

Bankruptcy Court granted the Debtors' motions for orders to have their cases administered

jointly and to have certain orders in Enterprises' case deemed to apply with respect to, and in

each, of the other Debtors' Chapter 11 Cases.  Each of the Debtors was (and is) qualified to be a

debtor under Section 109 of the Bankruptcy Code.

        C.     Jurisdiction and Venue.  This Court has jurisdiction over this matter

pursuant to 28 U.S.C. §§ 157(a) and 1334.  This is a core proceeding pursuant to 28 U.S.C. §

157(b)(2)(A), (L) and (O) and this Court has jurisdiction to enter a final order with respect

thereto.  Venue in the Southern District of New York was proper on the Enterprises Petition Date

and the Voluntary Petition Date and continues to be proper under 28 U.S.C. §§ 1408 and 1409.

        D.     Judicial Notice.  The Court takes judicial notice of the docket of the

Debtors' Chapter 11 Cases maintained by the Clerk of the Court, including, without limitation,

all pleadings, declarations, affidavits and other documents filed, all orders entered, and the

transcripts of, and all evidence and arguments made, proffered or adduced at, the hearings held

before the Court during the pendency of the Chapter 11 Cases.

        E.     Burden of Proof.  The Debtors, as proponents of the Plan, have met the

burden of proving the elements of Section 1129 of the Bankruptcy Code by a preponderance of

the evidence.

        F.     Solicitation and Notice.  On August 23, 2007, the Court entered the

Disclosure Order.  The Disclosure Order, among other things, approved the Disclosure Statement

and Plan Summary as containing "adequate information" of a kind and in sufficient detail to

enable hypothetical, reasonable investors typical of the Debtors' creditors and Subscribers to make an informed judgment whether to accept or reject the Plan.

       G.     The Debtors caused the Solicitation Package (as defined in the Disclosure Order ) to be served upon: the Committee, the U.S. Trustee, Textron, the DIP Lender, all holders of equity interests, all persons who have filed proofs of claim in any of the Debtors' cases, all persons who have requested special notice in any of the Debtors' cases pursuant to Rule 2002 of the Bankruptcy Rules, the IRS, the secretaries of state of Delaware, New York, California, Massachusetts and Florida, the Securities and Exchange Commission, any entity that has filed with the Court a notice of transfer of a claim under Bankruptcy Rule 3001(e) on or prior to August 21, 2007, all persons or entities listed in the Debtors' consolidated schedules, and all other known creditors of the Debtors.

       H.     The Solicitation Package consisted of the (1) Notice of Confirmation Hearing and Procedures Confirmation; (2) the (a) Plan and Disclosure Statement or (b) Plan Summary (for Subscribers only); (3) a Ballot or Notice of Non-Voting Status; and (5) a letter in support of the Plan from the Debtors and the Committee.

       I.     The Solicitation Package was served in compliance with the Disclosure Order, the Bankruptcy Code and the Bankruptcy Rules.  As described in the Disclosure Order, and as evidenced by the Epiq Affidavit and the certificates of service filed in connection therewith, (i) the service of the Solicitation Package was adequate and sufficient under the circumstances of the Chapter 11 Cases, and (ii) adequate and sufficient notice of the Confirmation Hearing and other requirements, deadlines, hearings, and matters described in the Disclosure Order was timely provided in compliance with the Bankruptcy Code and Bankruptcy Rules, and provided due process and an opportunity to appear and be heard to all parties in interest.  No other or further notice is required.

3767776

J.      Voting.  The Disclosure Order fixed September 19, 2007, as the Voting

Deadline.  Votes to accept and reject the Plan have been solicited and tabulated fairly, in good

faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the

Disclosure Statement and the Disclosure Order.  As set forth in the Epiq Affidavit, the Plan has

been accepted, within the meaning of Section 1126(c) of the Bankruptcy Code, by each Class of

impaired Claims entitled to vote on the Plan: Classes 1, 2 and 3.  Classes 4 and 5 (Equity

Interests) are deemed to have rejected the Plan.

K.      Substantive Consolidation.  The Debtors shall be substantively consolidated

under the Plan in recognition of the economic reality that the Debtors' books and records are

incapable of being "untangled" from one another, and creditors, as well as the Debtors

themselves, have dealt as though the Debtors are a single entity.  There has been no showing that

the rights or interests of any creditors will be unduly harmed or affected by such substantive

consolidation.

L.      Section 1129(a)(1) - Compliance of the Plan with Applicable Provisions of

the Bankruptcy Code.  The Plan complies with all applicable provisions of the Bankruptcy Code

as required by 11 U.S.C. § 1129(a)(1), including, without limitation, 11 U.S.C. §§ 1122 and

1123.  The Plan is dated and identifies the Debtors as proponents of such Plan.  Pursuant to

Sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, the Plan designates Classes of Claims

and Equity Interests, other than Administrative Claims and Priority Tax Claims.  As required by

Section 1122(a) of the Bankruptcy Code, each Class of Claims and Equity Interests contains only

Claims or Equity Interests that are substantially similar to the other Claims or Equity Interests

within such Class.  A reasonable basis exists for the classifications in the Plan.  Pursuant to

Sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code, Article III of the Plan specifies all

Claims and Equity Interests that are not impaired and the treatment of all Claims and Equity

Interests that are impaired. Article III of the Plan identifies Classes 1, 2, 3, 4 and 5 as impaired

under the Plan. Pursuant to Section 1123(a)(4) of the Bankruptcy Code, the Plan also provides

the same treatment for each Claim or Equity Interest within a particular Class. Pursuant to

Section 1123(a)(5) of the Bankruptcy Code, the Plan provides adequate means for the Plan's

implementation, as set forth in Articles V and VI of the Plan. The Debtors will have,

immediately upon the Effective Date of the Plan, sufficient cash available to make all payments

that are required to be made on the Effective Date pursuant to the terms of the Plan.

M.    Section 1129(a)(2) - Compliance of the Debtors with Applicable Provisions

of the Bankruptcy Code. As required by 11 U.S.C. § 1129(a)(2), the Debtors, as proponents of

the Plan, have complied with all applicable provisions of the Bankruptcy Code, including,

without limitation, 11 U.S.C. §§ 1125 and 1126 and Bankruptcy Rules 3017, 3018 and 3019. In

particular, the solicitation of votes to accept or reject the Plan was (i) in compliance with all

applicable nonbankruptcy laws, rules, and regulations governing the adequacy of disclosure in

connection with such solicitation, and (ii) solicited after disclosure of adequate information as

defined in 11 U.S.C. § 1125(a). The Debtors have further complied with all the provisions of the

Bankruptcy Code and the Bankruptcy Rules governing notice of the Plan and the Confirmation

Hearing. The record in the Chapter 11 Cases further reflects that the Debtors have attempted in

good faith to comply with the orders of the Court entered during the pendency of the Chapter 11

Cases.

N.    Section 1129(a)(3) - Proposal of Plan in Good Faith. The Debtors proposed

the Plan in good faith and not by any means forbidden by law. The Court has examined the

totality of the circumstances surrounding the formulation of the Plan and the evidence submitted

in connection with the Confirmation Hearing. The Plan has been accepted by the requisite

Holders of Claims in all Classes entitled to vote on the Plan and such acceptance evidences the

informed judgment of creditors that the Plan is in their best interests. The Plan was proposed after arms'-length and good faith negotiations among the parties, and for the legitimate and honest purpose of maximizing the value of the Debtors' Estates and effectuating a fair and equitable distribution of such value to creditors. The Plan also has the support of the Committee. Therefore, the Plan has been proposed in good faith, as such term is used in Sections 1129(a)(3) and 363(m) of the Bankruptcy Code.

O.    <u>Section 1129(a)(4) - Bankruptcy Court Approval of Certain Payments as Reasonable</u>. Pursuant to Section 1129(a)(4) of the Bankruptcy Code, any payment made or promised by the Debtors or by any person acquiring property under the Plan, for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been or will be disclosed to this Court, and has been approved by, or is subject to the approval of, the Court as reasonable.

3767776

P.    Section 1129(a)(5) - Disclosure of Identity and Proposed Management, Compensation of Insiders, and Consistency with the Interests of Affiliations of Creditors and Public Policy.  Pursuant to Section 1129(a)(5) of the Bankruptcy Code, "Exhibit O" to the Disclosure Statement discloses the identity, compensation and affiliations of the Debtors' post-Confirmation board of directors (the "Board") as: (i) Ed. A. Williams; (ii) Jeffrey C. Scott; and (iii) Ivan K. Hopkins, and the identity, compensation and affiliation of the Debtors' post-confirmation executive officer as Jeremy Miller.  The Plan and the Disclosure Statement disclose the identity of the Debtors' non-officer senior management as: (i) Julie Als, Vice President; (ii) Michael G. Feinberg, Controller; (iii) Cherron Johnson, Executive Vice President Brand Development; and (iv) Leroy Peoples, DBA LBJ, Inc., General Manager, and their respective affiliations with the Debtors.  The nature of the compensation of the Debtors' non-officer senior management was disclosed in "Exhibit O" to the Disclosure Statement.  Joseph E. Myers has agreed to serve as the Source Creditors' Trustee.  Mr. Myers is a Member of the Committee. Compensation to be received by the Trustee of the Source Creditors' Trust was disclosed in the Source Creditors' Trust Agreement.  Based on the foregoing, the Plan satisfies the requirements of Section 1129(a)(5) of the Bankruptcy Code.

Q.    Section 1129(a)(6) - Approval of Rate Changes.  No governmental regulatory commission has jurisdiction over the rates of the Debtors.  Accordingly, Section 1129(a)(6) is inapplicable to the Chapter 11 Cases.

R.    Section 1129(a)(7) - Best Interests of Creditors.  With respect to each Impaired Class of Claims, each holder of a Claim in such Class has accepted the Plan or will receive or retain under the Plan on account of such Claim or Equity Interest property of a value, as of the Effective Date, that is not less than the amount such holder would receive or retain if the Debtors were liquidated on the Effective Date under Chapter 7 of the Bankruptcy Code.  A

-12-

conversion of the Chapter 11 Cases to Chapter 7 would likely be accompanied by a decrease in the amount of recovery that creditors would receive on account of their claims, as indicated in the Liquidation Analysis. Thus, the Plan provides a superior recovery to creditors relative to conversion of the Chapter 11 Cases and is in the best interests of creditors under Section 1129(a)(7) of the Bankruptcy Code.

S.    Section 1129(a)(8) - Acceptance of the Plan By Each Impaired Class. The Debtors have not complied with the provisions of Section 1129(a)(8) of the Bankruptcy Code, requiring that all impaired classes accept the plan, because Classes 4 and 5 are conclusively presumed to have rejected the Plan. As described below, however, the Debtors have satisfied Section 1129(b) of the Bankruptcy Code as to Classes 4 and 5 under the Plan.

T.    Section 1129(a)(9) - Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code. The Plan provides for treatment of Administrative Claims, Priority Tax Claims and Other Priority Claims in the manner required by Section 1129(a)(9) of the Bankruptcy Code. With respect to the IRS' Claims, the IRS and the Debtors have agreed to address the IRS' concerns relative to the Plan by agreeing, and this Confirmation Order hereby provides, as follows: (1) the IRS' Priority Tax Claim shall be treated and paid in accordance with Section II.(B)(c) of the Plan except that interest shall accrue on such claim at the daily compounded rate of 8% per annum, and payment shall be made quarterly, with the first payment to be made no later than the first day after the first quarter following the month in which the Effective Date occurs and the last payment to be made no later than September 21, 2011; (2) any unpaid federal tax liabilities of the Debtors arising between the filing of the Petitions in the Debtors' cases, and confirmation of the Plan shall be paid in full upon the Effective Date; (3) any liabilities to the IRS relating to returns that are not due or filed before the date of confirmation, or, if due and filed, for which the IRS has not had 180 days to examine, will pass

-13-

through the bankruptcy and be obligations of the Reorganized Debtor to be paid in full in accordance with the Plan; and (4) upon the Reorganized Debtor's default in making a payment to the IRS under the terms of the Plan, and upon providing the Reorganized Debtor with written notice and a reasonable opportunity to cure the default, but not less than 30 days, the IRS may institute a collection action or pursue any and all available remedies without further leave of the Court. The Debtors have represented that they shall file any unfiled tax returns that are due no later than November 1, 2007

U.     Section 1129(a)(10) - Acceptance by at Least One Impaired Class. As required by Section 1129(a)(10) of the Bankruptcy Code, at least one Class of Claims that is Impaired under the Plan has accepted the Plan, excluding the votes cast by insiders, specifically, each of Classes 1, 2 and 3 have accepted the Plan.

V.     Section 129(a)(11) - Feasibility. The Plan meets the requirement of Section 1129(a)(11) of the Bankruptcy Code, that the Plan is not likely to be followed by liquidation or the need for further financial reorganization, except as set forth in the Plan. The Debtors will have sufficient funds to satisfy their obligations under the Plan and to provide reasonable capital for the Reorganized Debtor, as shown in the Schedule of Estimated Sources and Uses of Funds appended as "Exhibit D" to the Disclosure Statement.

W.     Section 1129(a)(12) - Payment of Bankruptcy Fees. In accordance with Section 1129(a)(12) of the Bankruptcy Code, Article XIV(A) of the Plan provides for the payment of all fees payable under 28 U.S.C. § 1930 on or before the Effective Date. The Debtors and/or Reorganized Debtor have adequate means to pay all such fees.

X.     Section 1129(a)(13) - Retiree Benefits. The Debtors are not obligated to provide any retiree benefits, as such term is defined in Section 1114 of the Bankruptcy Code.

3767776

Accordingly, Section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Chapter 11 Cases.

Y.    Section 1129(a)(14) - Domestic Support Obligations.  The Debtors are not required by a judicial or administrative order, or by statute, to pay domestic support obligations. Accordingly, Section 1129(d)(14) of the Bankruptcy Code is inapplicable to the Chapter 11 Cases.

Z.    Section 1129(a)(15) - Debtors are Not Individuals.  The Debtors are not individuals.  Accordingly, Section 1129(a)(15) of the Bankruptcy Code is inapplicable to the Chapter 11 Cases.

AA.    Section 1129(a)(16) - No Applicable Nonbankruptcy Law Regarding Transfers.  The Debtors are moneyed businesses or commercial corporations.  Accordingly, Section 1129(a)(16) of the Bankruptcy Code is inapplicable to the Chapter 11 Cases.

BB.    Sections 1129(b)(1) and (2) - Cramdown.  Classes 4 and 5 are deemed to reject the Plan.  Classes 4 and 5 will not receive or retain any property under the Plan in respect of their Equity Interests, which are cancelled and discharged under the Plan, and there is no junior creditor or interest holder that will receive or retain anything under the Plan on account of such junior interest any property.  The Plan does not discriminate unfairly, and is fair and equitable, with respect to the Holders of Equity Interests in Classes 4 and 5, as required by Sections 1129(b)(1) and (2) of the Bankruptcy Code.  The Plan is to be confirmed notwithstanding the inability to satisfy Section 1129(a)(8) of the Bankruptcy Code with respect to Classes 4 and 5, pursuant to Section 1129(b)(1) of the Bankruptcy Code.  Upon the Confirmation and the occurrence of the Effective Date, the Plan shall be binding upon the Holders of Equity Interests in Classes 4 and 5.

CC.   Section 1129(c) - Only One Plan.  The Plan is the only plan filed in the

Chapter 11 Cases.  Accordingly, Section 1129(c) of the Bankruptcy Code is inapplicable to the

Chapter 11 Cases.

DD.   Section 1129(d) - Principal Purpose of the Plan.  The principal purpose of

the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the

Securities Act of 1933, thereby satisfying the requirements of Section 1129(d) of the Bankruptcy

Code.

EE.   Section 1125(e) - Good Faith Solicitation.  Based on the record before the

Court in the Chapter 11 Cases, (i) the Debtors are deemed to have solicited acceptances of the

Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and

the Disclosure Order, including without limitation, Sections 1125(c) and (e) of the Bankruptcy

Code, and any applicable non-bankruptcy law, rule or regulation governing the adequacy of

disclosure in connection with such solicitation, and (ii) the Debtors, the Committee, and all of

their respective members, officers, directors, agents, financial advisers, attorneys, employees,

equity holders, partners, affiliates, and representatives who, in each case, are serving in such

capacity as of the Confirmation Hearing, shall be deemed to have participated in good faith and

in compliance with the applicable provisions of the Bankruptcy Code in the solicitation of the

Plan and are entitled to the protections afforded under the Plan and by Section 1125(e) of the

Bankruptcy Code.

FF.   Satisfaction of Confirmation Requirements.  Based upon the foregoing, the

Plan satisfies the requirements for Confirmation set forth in Section 1129 of the Bankruptcy

Code.

3767776

GG.   <u>Authority</u>.  The Reorganized Debtor has the authority, pursuant to the Plan and this Confirmation Order, to enter into the Textron Note and related security agreement upon the Effective Date.

HH.   <u>Good Faith</u>.  The Debtors, the Committee, and all of the parties' respective professionals will be acting in good faith if they proceed to: (i) consummate the Plan; and (ii) take the actions authorized and directed by this Confirmation Order.

## II.
## ORDER

BASED UPON THE FOREGOING FINDINGS OF FACT, IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

1.   <u>Confirmation</u>.  Subject to the terms hereof and except as explicitly stated herein, the Plan, each of its provisions, and the exhibits thereto (including of the Source Creditors' Trust Agreement) shall be, and hereby are, CONFIRMED and approved in each and every respect pursuant to Section 1129 of the Bankruptcy Code.  The terms of the Plan and the Source Creditors' Trust Agreement are incorporated by reference into, and are an integral part of, this Confirmation Order.

2.   <u>Objections</u>.  All objections and responses to the Plan, including the Objections, to the extent not already withdrawn or resolved pursuant to representations on the record at the Confirmation Hearing, shall be, and hereby are, overruled.

3.   <u>Omission of Reference to Particular Plan Provisions</u>.  The failure to specifically describe or include any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Plan be approved and confirmed in its entirety, subject to the terms of this Confirmation Order.  Each provision of the Plan (except as modified or amended hereby) shall be deemed authorized and approved by this Confirmation Order and shall have the same binding effect of

-17-

every other provision of the Plan, whether or not mentioned in this Confirmation Order.  In the event of any inconsistencies between the Plan and this Confirmation Order, this Confirmation Order shall govern.

4.    <u>Plan Classification Controlling</u>.  The classification of Claims and Equity Interests for purposes of distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The classifications set forth on the Ballots tendered to or returned by the Holders of Claims in connection with voting on the Plan: (i) were set forth on the Ballots solely for the purposes of voting to accept or reject the Plan; (ii) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes; (iii) may not be relied upon by any creditors as representing the actual classification of such Claims under the Plan for distribution purposes; and (iv) shall not be binding on the Debtors, the Reorganized Debtor, the Source Creditors' Trust, or the Trustee for any purposes other than tabulating votes on the Plan.

5.    <u>Distributions Under the Plan</u>.  All distributions under the Plan shall be made in accordance with Article VIII of the Plan and the terms of this Confirmation Order, including, without limitation, Section T of this Confirmation Order concerning the claims of the IRS.

6.    <u>Substantive Consolidation</u>.  The entry of this Confirmation Order shall constitute approval by the Bankruptcy Court, pursuant to Sections 105(a) and 1123(a)(5)(C) of the Bankruptcy Code, effective as of the Effective Date of the Plan, of the substantive consolidation of the Debtors and their respective Estates, for all purposes relating to the Plan, including for purposes of Confirmation and distributions.  The Court concludes that the substantive consolidation of the Debtors proposed in the Plan is necessary and appropriate, and the benefits of substantive consolidation in the Chapter 11 Cases far outweigh any possible harm

3767776

to Creditors.  Accordingly, use of substantive consolidation as an equitable remedy is appropriate

in the Chapter 11 Cases.  On and after the Effective Date, except as set forth below: (i) all assets

and liabilities of the Debtors shall be treated as though they were pooled; (ii) no distribution shall

be made under the Plan on account of any Claim held by any one of the Debtors against any of

the other Debtors; (iii) no distribution shall be made under the Plan on account of any Equity

Interest held by any one of the Debtors in any of the other Debtors; (iv) all guaranties of any one

of the Debtors of the obligations of any of the other Debtors shall be eliminated so that any

Claim against any one of the Debtors, and any guaranty thereof executed by any of the other

Debtors, shall be one obligation of the consolidated Debtors' Estates; and (v) every Claim filed

or to be filed in the Chapter 11 Cases of any of the Debtors shall he deemed filed against the

consolidated Debtors' Estates and shall be one Claim against, and one obligation of, the Debtors'

Estates.

       7.   <u>Revesting of Assets</u>.  The property of the Estates of the Debtors shall vest

in the Reorganized Debtor (or the Source Creditors' Trust, to the extent set forth in the Plan) on

the Effective Date of the Plan, free and clear of any and all Claims and/or Equity Interests,

except (i) the Liens of Textron shall remain attached to all the assets of the Reorganized Debtor

as first priority liens (other than certain Permitted Liens (as defined in the Loan Documents))

without the need for Textron to file additional financing statements, mortgages, intellectual

property filings or other filings of such perfection against the Reorganized Debtor and its assets,

and (ii) as specifically provided in the Plan, without any further order of the Court.  As of the

Effective Date, and except (a) for Textron and (b) as provided in the Plan, all mortgages, deeds

of trust, liens, or security interests in any property of the Estates, including those Liens granted

under the DIP Financing, will be released and all the right, title and interest of any Holder of any

such mortgage, deeds of trust, liens or security interests shall be canceled, annulled, terminated

3767776

and become null and void.  The Chief Executive Officer of the Reorganized Debtor, and Trustee

of the Source Creditors' Trust, as the case may be, shall be authorized to act as attorney-in-fact

for any such Holder to cause all public records to properly reflect and effectuate this provision.

8.    Investigation Termination Date.  The Investigation Termination Date (as

defined in the Stipulation and Order Authorizing Limited Use of Cash Collateral (Docket No.

52)) is terminated upon the Effective Date.

9.    Establishment of the Source Creditors' Trust.  As set forth in Article V of

the Plan, on the Effective Date, the Committee, on behalf of Holders of Allowed General

Unsecured Claims, shall establish the Source Creditors' Trust for the benefit of all Allowed

General Unsecured Claims (other than those held by Subscribers).  The Debtors shall relinquish

any and all rights in and to the Trust Assets, which shall include all of the Debtors' claims

against the entities owned by David Mays and/or Raymond Scott (other than the Debtors), which

shall be transferred to the Source Creditors' Trust.  The entry of the Confirmation Order shall

automatically vest the Trust Assets in the Source Creditors' Trust without the need for any

additional filings, documentation, notice, order, acknowledgements or any other further action.

The Source Creditors' Trust shall be established for the primary purpose of: (i) administering and

overseeing the liquidation of  the Trust Assets; (ii) reconciling the Claims of Creditors; (iii)

objecting to the Claims that are objectionable to the extent the Holder thereof claims an interest

in the Source Creditors' Trust in respect of such Claim, and continuing to litigate or settle any

objections that are pending as of the Effective Date; (iv) investigating and prosecuting the Trust

Causes of Action on behalf of the Source Creditors' Trust; and (v) investing the assets of the

Source Creditors' Trust in accordance with the Source Creditors' Trust Agreement and the Plan.

The Source Creditors' Trust shall act in accordance with Treasury Regulation Section 301.7701-

4(d), with no objective to continue or engage in the conduct of a trade or business.  The Source

Creditors' Trust shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein. The Source Creditors' Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the Beneficiaries treated as grantors and owners of the trust. The Source Creditors' Trust and the Trustee shall have the rights and duties set forth in the Plan and the Source Creditors' Trust Agreement. The Source Creditors Trustee shall be bonded in an amount of not less than 110% of the amount held in the Source Creditors' Trust.

10.    Trustee of Source Creditors' Trust.  As of the Effective Date, Joseph E. Myers is hereby approved to serve as the initial Trustee of the Source Creditors' Trust pursuant to the Plan and the Source Creditors' Trust Agreement.

11.    Executory Contracts and Unexpired Leases.  On the Effective Date, each executory contract and unexpired lease entered into by any of the Debtors prior to their petition dates that has not previously expired or terminated pursuant to its terms shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code; the foregoing shall not apply to executory contracts or unexpired leases that (i) were previously assumed or rejected, or (ii) are designated, an on the conditions stated, in the Schedule of Executory Contracts and Unexpired Leases to be Assumed and Assigned appended as "Exhibit G" to the Disclosure Statement, or by motion, to be assumed and assigned to the Reorganized Debtor, with the cure amount, if any, as stated in "Exhibit G" to the Disclosure Statement or motion. The entry of this Confirmation Order, or other order approving such motion, as the case shall be, shall constitute an order of the Bankruptcy Court approving the Debtors' rejection, or assumption and assignment, as the case may be, of such executory contracts and/or unexpired leases as of the Effective Date or other date if specified in an order of the Bankruptcy Court, and approving the cure amount, if any, stated in the "Exhibit G" to the Disclosure Statement. This Confirmation Order constitutes an

3767776

order of the Court approving such rejections, and assumption and assignments, pursuant to

Section 365 of the Bankruptcy Code.  Notwithstanding anything to the contrary herein, nothing

herein or in the Plan shall have any effect whatsoever on any insurance policies, insurance

coverages, or contracts of insurance issued to, or for the benefit of, the Debtors, their Estates, the

Reorganized Debtor, or that cover claims against any other Person, all of which shall continue in

full force and effect for the benefit of the covered persons and entities unless otherwise ordered

by a separate order of the Court.

        12.    Claims for Rejection Damages.  All Proofs of Claim with respect to Claims

arising from the rejection of executory contracts or unexpired leases, if any, must be filed no

later than thirty (30) days after the Effective Date.  Any Claims arising from the rejection of an

executory contract or unexpired lease not filed within such time will be forever barred from

assertion against the Debtors, their Estates and property, the Reorganized Debtor, the Source

Creditors' Trust and the Trustee unless otherwise ordered by the Court, or provided in the Plan.

All such Claims for which Proofs of Claim are required to be filed will be, and will be treated as,

General Unsecured Claims, subject to the provisions of Article III of the Plan.  Nothing

contained herein shall release any party from filing its Claim prior to any otherwise applicable

Bar Date.

        13.    Settlements and Compromises.  The Plan implements the Plan Agreement

which includes within its terms the settlement of claims and releases for the benefit of the DIP

Parties.  The DIP Parties' Releases (as used in the Plan Confirmation Memorandum) are

essential and integral to the Plan, and the consideration to be provided by the DIP Parties for the

DIP Parties' Releases is fair and reasonable value for the resolution of potential claims against

the DIP Parties, including the related injunctions.  Without the funding to be provided pursuant

to the Plan Agreement, which requires the inclusion of the releases, the Plan could not be

3767776

confirmed.  Accordingly, the DIP Parties' Releases are in the best interests of the Debtors'

Estates and their Creditors, and are hereby approved.

14.    <u>Exculpation, Releases, Injunctions and Related Provisions</u>.  The

exculpation, release and injunctive provisions of Article V of the Plan are hereby approved.

Along with the DIP Parties' Releases described above, the exculpation, releases, and injunction

provisions contained in the Plan for the benefit of the Released Parties are fair and equitable, are

given for valuable consideration, are in the best interests of the Debtors' Estates and their

Creditors, and shall be effective and binding upon all persons and entities.  This Court

acknowledges that without the approval of the foregoing exculpation, the Plan could not be

confirmed.

15.    Notwithstanding anything in the Plan to the contrary, the exculpation shall

not apply to the Released Parties' gross negligence, willful misconduct, unauthorized use of

confidential information that causes damages, or ultra vires acts, fraud or criminal conduct, and

that the liability of the Debtors' professionals shall not be construed to be limited contrary to the

requirements of DR 6-102 of the Code of Professional Responsibility.

16.    In approving the settlements, compromises, releases and injunctions under

the Plan, this Court has considered, among other things: (i) the nature of the claims asserted or

potentially assertable by and between the Debtors, the Creditors, the DIP Parties and the

Released Parties; (ii) the balance of the likelihood of success of claims which might be asserted

by the Debtors or other claimants against the beneficiaries of releases and exculpation against the

likelihood of success of the defenses or counterclaims possessed by such beneficiaries; (iii) the

complexity, cost and delay of litigation that would result in the absence of these settlements,

compromises, releases and injunctions; (iv) the overruling of any and all objections of any

creditor or party in interest to the settlements, exculpation, compromises, releases and

-23-

injunctions; (v) the acceptance of the Plan by an overwhelming majority of the holders of

Claims, as set forth in the Epiq Affidavit; (vi) that the Debtors' Estates will receive substantial

consideration as a consequence of such settlements, exculpation, compromises, releases and

injunctions; (vii) that the enjoined claims against the DIP Parties would otherwise indirectly

impact the Debtors' reorganization by way of claims for indemnity or contribution; and (viii) that

the Plan, which gives effect to the settlements, exculpation, compromises, releases and

injunctions are the product of extensive arms-length and good faith negotiations among the

Debtors, the Committee and the DIP Parties.

17.     Nothing in the Confirmation Order or the Plan shall effect a release of any

claim by the United States Government or any of its agencies or any state and local authority

whatsoever, including without limitation any claim arising under the Internal Revenue Code, the

environmental laws or any criminal laws of the United States or any state and local authority

against the Released Parties, nor shall anything in the Confirmation Order or the Plan enjoin the

United States or any state or local authority from bringing any claim, suit, action or other

proceedings against the Released Parties for any liability whatever, including without limitation

any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any

criminal laws of the United States or any state or local authority, nor shall anything in the

Confirmation Order or the Plan exculpate any party from any liability to the United States

Government or any of its agencies or any state and local authority whatsoever, including any

liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws

of the United States or any state and local authority against the Released Parties.

18.     <u>Preservation of Bankruptcy Causes of Action</u>.  Unless a Cause of Action

against a Creditor or other Person is, in writing, expressly waived, relinquished, released,

assigned, compromised, or settled in the Plan, or in a Final Order, all rights with respect to such

3767776

Cause of Action are reserved to the Reorganized Debtor (except for those that constitute part of
the Trust Causes of Action, which shall vest in the Source Creditors' Trust).

19.     Injunction.  On and after the Effective Date, except as set forth in the Plan,
all Persons and Entities shall be permanently enjoined from: (i) commencing or continuing in
any manner any action or proceeding (whether directly, indirectly, derivatively or otherwise) on
account of or respecting any Causes of Action of the Debtors which the Reorganized Debtor
and/or the Source Creditors' Trust (and the Trustee, as the case may be) will, as of the Effective
Date, hold the exclusive authority to pursue, in accordance with the Plan and which have not
been expressly assigned to another Person or Entity; and (ii) commencing or continuing any
Claim, Equity Interest, Cause of Action, or equitable remedy against the Debtors, the
Reorganized Debtor, the Source Creditors Trust, the Trustee, the DIP Parties, or any other Person
or Entity released under the Plan, the Confirmation Order, or other orders of the Bankruptcy
Court.  Except as specifically provided in the Plan or this Confirmation Order, effective on entry
of this Confirmation Order, subject to occurrence of the Effective Date, the Reorganized Debtor
shall be discharged pursuant to Section 1141(d)(1)(A) of the Bankruptcy Code from any and all
Claims, whether or not (a) a Proof of Claim based on such Claim was listed on the Schedules of
the debtor; (b) such Claim is or was determined to be an Allowed Claim; or (c) the holder of
such Claim has voted on or accepted the Plan.

20.     Binding Nature of Plan.  The rights, benefits and obligations of any Person
or Entity named or referred to in the Plan shall be binding on and inure to the benefit of any heir,
executor, administrator, successor or assign of such Person or Entity.

21.     Corporate Action / Dissolution.  On the Effective Date, the matters under
the Plan involving or requiring corporate action of the Debtors, including but not limited to,
actions requiring a vote or other approval of the board of directors, shareholders, managers,

members, or execution of all documentation incident to the Plan, including, without limitation, the filing of an amended certificate of incorporation for the Reorganized Debtor, shall be deemed to have been authorized by this Confirmation Order and to have occurred and be in effect from and after the Effective Date without any further action by anyone, including the Court or such officers, managers, shareholders, members or directors, of the Debtors.

22.    On the Effective Date, all officers, directors and managers of the Debtors shall be deemed removed from such positions and the Debtors' charters shall be deemed amended to prohibit: (i) the issuance of nonvoting equity securities; or (ii) the existence of securities possessing an inappropriate distribution of voting power, all as more specifically required and described in Section 1123(a)(6) of the Bankruptcy Code.

23.    <u>Exemption from Taxation</u>.  Under Section 1146(c) of the Bankruptcy Code, the making or delivery of an instrument of transfer under a Chapter 11 plan may not be taxed under any law imposing a stamp tax or similar tax.  Pursuant thereto, and because the Debtors are reorganizing their Assets hereunder, entry of the Confirmation Order shall be a determination that no stamp or similar tax may be imposed on any sale or transfer pursuant to the Plan of property by the Debtors, the Reorganized Debtor or the Source Creditors' Trust.

24.    <u>Distributions</u>.  The Reorganized Debtor and the Trustee will make all distributions as provided for under the Plan and Source Creditors' Trust Agreement, respectively.

25.    <u>Retention of Jurisdiction</u>.  Notwithstanding entry of the Confirmation Order or the Effective Date having occurred, the Court shall have jurisdiction over matters arising out of, and related to, the Chapter 11 Cases and the Plan under, and for the purposes of, Sections 105(a), 1127, 1142, and 1144 of the Bankruptcy Code and for, among other things, the purposes set forth in Article XI of the Plan.

3767776

26.    <u>Payment of Statutory Fees</u>.  All fees payable pursuant to 28 U.S.C § 1930 shall be paid on or before the Effective Date.  The Source Creditors' Trust shall pay fees owing that accrue under 28 U.S.C § 1930 after the Effective Date until a Final Decree is entered in the Debtors' Chapter 11 Cases, or the Bankruptcy Court orders otherwise.  The Reorganized Debtor shall file United States Trustee quarterly fee status reports with each quarterly fee paid after Confirmation, and the Trustee shall file such reports after the Effective Date.  Each of the Debtors shall continue to pay such quarterly fees after the Effective Date until the earlier of (1) the Court orders otherwise, (2) the final decree is issued in the Debtors' cases, or (3) the Reorganized Debtor has filed with the Secretary of State of the state where particular Debtors are organized a notice of the termination of such corporate entity and supplied the U.S. Trustee with proof of such filing having been made.

27.    <u>Notice of Entry of Confirmation Order</u>.  Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c), the Reorganized Debtor, may, but is not required, to serve a notice of the entry of this Confirmation Order on the U.S. Trustee and all holders of Claims or Equity Interests to whom the Notice of Confirmation Hearing and Procedures was sent.  The Reorganized Debtor shall be, and hereby is, directed to serve copies of this Confirmation Order on each party that has filed a notice of appearance in the Chapter 11 Cases pursuant to Bankrutpcy Rule 2002 and on each party who filed an objection or response to, or statement or comment regarding the Plan, no later than thirty (30) days after the Confirmation Date.  No further notice of the entry of this Confirmation Order shall be required.

28.    <u>Final Fee Applications</u>.  Except to the extent that another Bar Date applies pursuant to an order of the Court, Professionals or other Entities requesting compensation or reimbursement of expenses, pursuant to Sections 327, 328, 330, 331, 503(b), and 1103 of the Bankruptcy Code, for services rendered and/or expenses incurred prior to the Effective Date of

3767776

the Plan, must file and serve an application for final allowance of compensation and
reimbursement of expenses, so that such service is received by counsel to the Debtors, the
Committee, the DIP Lender and the U.S. Trustee at the addresses listed in Article XII (D) of the
Plan, no later than sixty (60) days after the Effective Date unless the Court orders otherwise,
including upon an order modifying such requirement being presented to the Court on notice to
counsel for the U.S. Trustee, the Committee and the persons who requested notice under
Bankruptcy Rule 2002.  All such applications for final allowance of compensation and
reimbursement of expenses shall be subject to the authorization and approval of the Bankruptcy
Court.  Holders of Professional Fee Claims requesting compensation or reimbursement of
expenses that do not file such requests by the applicable Bar Date shall be forever barred from
asserting such Claims against the Debtors, the Reorganized Debtor, their successors, their
assigns (including, without limitation, the Source Creditors' Trust and the Trustee), or their
Estate Assets.  Any objection to any application for allowance of Professional Fee Claims shall
be filed on or before the date specified in such application.

        29.    <u>Post-Effective Date Reorganized Debtor's Expenses</u>.  The Reorganized
Debtor and the Source Creditors' Trust may retain and compensate Professionals for services
rendered following the Effective Date without order of the Bankruptcy Court except as otherwise
specified in the Plan or Source Creditors' Trust Agreement.

        30.    <u>Dissolution of Committee</u>.  Upon the Effective Date, the Committee shall
be dissolved and its members shall be deemed released of any further duties, responsibilities or
obligations concerning the Committee.

        31.    <u>Termination of Equity Interests</u>.  Upon the Effective Date, all Equity
Interests, and other rights of equity security holders in the Debtors, shall terminate.

3767776

32.    <u>Books and Records</u>.  The Reorganized Debtor, for a period of four (4) consecutive years starting on the Effective Date, shall provide the Trustee and his professionals with reasonable unfettered access to the Debtors' pre-petition books and records, during normal business hours upon reasonable notice.

33.    <u>Further Assurances</u>.  The Debtors, the Reorganized Debtor, the Committee, the Source Creditors' Trust and the Trustee shall, from time to time, prepare, execute and deliver any agreements or documents, and take any other actions as may be necessary or advisable, to effectuate the provisions and intent of the Plan, without further order of the Court.

34.    <u>Federal Trade Commission</u>.  Nothing in this Confirmation Order shall be construed to limit, in any fashion, the lawful regulatory and enforcement powers of the Federal Trade Commission.

35.    <u>No Stay of Order</u>.  Notwithstanding the possible applicability of Federal Rules of Bankruptcy Procedure 6004(h) and 7062, this Confirmation Order shall not be stayed for ten days after the entry hereof, but shall be effective and enforceable immediately upon issuance hereof.   Therefore, any party objecting to this Confirmation Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot in law and/or equity.

36.    <u>Inconsistencies</u>.  To the extent of any inconsistency between the provisions of the Plan and the Disclosure Statement, the terms and conditions of the Plan shall govern.  To the extent of any inconsistency between the Plan and this Confirmation Order, the terms and conditions contained in this Confirmation Order shall govern.

3767776

37.    <u>Integration of Provisions</u>.  The provisions of this Confirmation Order are

integrated with each other and are nonseverable and mutually dependent.


Dated: October 1, 2007
       New York, New York

                              **<u>s/Arthur J. Gonzalez</u>**
                              THE HONORABLE ARTHUR J. GONZALEZ
                              UNITED STATES BANKRUPTCY JUDGE

3767776

**Exhibit A to**
**Order Confirming the Debtors' Fourth Amended Plan of Reorganization, dated**
**August 22, 2007, under Bankruptcy Code Section 1129 and Bankruptcy Rule 3020**

Based on the record in this case, the testimony elicited at the confirmation hearing held

on September 27 and 28, 2007 and the support expressed by the Creditors Committee, the Court

finds that the Debtors have amply met the burden of proving the elements of confirmation.  The

Debtors Fourth Amended Plan of Reorganization is therefore confirmed.  The objections to

confirmation filed by Windels Marx ("Windels") and David Mays ("Mays") are denied in their

entirety.  Neither Windels nor Mays put on direct evidence in support of their objections; rather

they relied on cross-examination of the Debtors' witnesses.  With respect to the objections the

Court makes the following findings.

Windels represented various Source entities both pre- and post-petition.  Windels objects

to confirmation in its capacity as a pre-petition, unsecured creditor (rather than as an

administrative creditor resulting from its prior role as Debtors' bankruptcy counsel).  Among

other things, Windels asserts that the Debtors improperly relinquished control of the company to

Black Enterprise/Greenwich Street Corporate Growth Partners, LLP ("BE/GS"), a preferred

shareholder and DIP Lender, and that as a result of such control the Plan benefits BE/GS to the

detriment of other creditors.  Windels contends that the Debtors failed to consider alternatives to

the Plan or to make sufficient efforts to maximize value.  Windels objects to substantive

consolidation arguing that some of the Source entities are "legitimate incorporated entities in

their own right" and are obligated to Windels for legal fees.  Unlike the unsecured creditors of

Enterprises, who provided magazine-related goods and services, Windels asserts that it provided

services to solvent, non-magazine entities with unique, non-magazine assets and liabilities.  As

such, Windels argues that it will be harmed by being "lumped together in one pot regardless of

1

the value of the assets of the creditor's particular debtor."  At the hearing, Windels conceded that

substantive consolidation may well be warranted but argued that, as a creditor of Entertainment,

it should be classified differently.

Mays is an equity holder and board member of the Debtors and is the former chief

executive officer.  Mays was dismissed from his duties prior to the bankruptcy filing on account

of alleged mismanagement following the Debtors' default under its secured credit facility, civil

litigation (including a multi-million judgment in favor of a former employee for harassment and

discrimination which judgment is being appealed) and a loss of asset value resulting from the

commencement of foreclosure actions.  At some point after his dismissal, Mays filed a chapter 7

case in the District of New Jersey.  At a joint disclosure statement/confirmation hearing where

the Court denied approval and ordered that the disclosure statement be amended and creditors be

resolicited, Mays appeared pro se.  At the confirmation hearing, Mays was represented by

special counsel.  Among other things, Mays states that the Debtors failed to notice him of board

meetings and board actions.  He asserts that the Debtors relinquished control of the company to

BE/GS and, as such, the Plan has not been proposed in good faith as required by the Bankruptcy

Code.  He argues that the Debtors have failed to maximize value particularly with respect to

intellectual property and stated that the Plan "fails to adequately apprise creditors, equity, and all

parties in interest as to all pending and potential contracts which will significantly appreciate the

value of the Debtors' businesses."  Finally, Mays argues that the Plan violates the absolute

priority rule, unfairly discriminates and is not feasible.

The overriding factor in overruling both the Windels and Mays objections is the fact that

Textron, the Debtors' prepetition lender, has a secured claim far in excess of the value of the

Debtors' assets under any realistic valuation scenario.  Textron has agreed to the terms of the

2

Plan pursuant to which it is waiving an overwhelming deficiency claim.  The Unsecured

Creditors' Committee (the "Committee") has also agreed to the terms of the Plan pursuant to

which unsecured creditors of any of the Debtors have an otherwise unavailable opportunity to

recover.  Every conceivable alternative to the Plan was investigated by the Committee.  They

pursued transactions with entities including Ecko Unltd, Vision Media and Alliance Capital

Partners, none of which resulted in a confirmable transaction.  The Committee's financial

advisors contacted parties who had previously appeared at foreclosure sales of the Debtors'

assets -- to no avail.  No serious interest has been forthcoming with respect to the Debtors

despite efforts by the parties with the most at stake in this case.

        Given the concessions made by Textron in recognition of the significant deficiency claim

it is confronting and given the marketing efforts undertaken by the parties in interest, it is simply

not credible that, as Windels and Mays -- neither of whom offered any independent evidence of

their own – assert, more value for unsecured creditors can be obtained.  They offer no

explanation as to how it could be that the efforts by Textron and the Committee to market and

find more value have come up so far short of the Textron lien.  At a prior hearing, where the

Court directed the Debtors to amend the disclosure statement, Mays, appearing pro se, informed

the Court that, in his view as an industry insider, the Debtors' assets were worth far more than

was being proposed.  Since that time, however, Mays failed to make any effort, other than

conclusory statements through counsel, to dispute the fully vetted valuations put forward in this

case.  Nor did he offer to testify at the hearing as to his knowledge of industry opportunities to

realize value in excess of the Textron lien.

        It is clear to the Court that BE/GS is not receiving under the Plan anything in excess of its

post-petition investment.  In satisfaction of the DIP Facility and funding of the Plan (including

3

the payment of all administrative and priority claims, the funding of the Source Creditors' Trust

for the benefit of unsecured creditors and the payment of working capital going forward), BE/GS

will receive 85% of the Reorganized Debtor and releases.  For the reasons advanced by the

Debtors and supported by the Committee, the Court hereby approves the releases.

      Various allegations have been raised by Windels and Mays questioning the Debtors'

good faith in proposing the Plan.  Having put on no independent evidence of bad faith, however,

and given the sophistication of and compromise by Textron and the Creditors' Committee, it is

simply not credible to suggest that BE/GS has manipulated the process to its advantage and to

the detriment of other creditors.  Debtors, by their evidence, have established their good faith in

prosecuting the Plan.  Nor does the Court accept the objectors' argument that unsecured creditors

are being treated unfairly where in a chapter 7 they would receive nothing and under this Plan

they receive an opportunity to share pro rata in the proceeds of a litigation trust and potential

value in the event of a sale.

      In support of its argument against substantive consolidation, Windels points to the

signing of separate retainer agreements for each of Enterprises and Entertainment as evidence of

operational separateness.  These agreements, however, were also signed by Jeffrey Scott of

BE/GS who Windels acknowledged had run the company as a single entity since 2006.

Moreover, the signing of separate retainers may well have been a result of how the Source

entities were being named in lawsuits.  Windels has not produced any evidence that it was ever

paid for its services by any entity other than Enterprises.  No evidence of a centralized banking

function has been introduced showing payments by other Source entities or inter-company

receivables.  Further, Windels certainly knew, at the time of signing the retainers -- as all

creditors knew or should have known -- that all of the assets of the Source entities were

4

encumbered by Textron's lien.

Windels points out that the Creditors' Committee was not representative of Entertainment's (non-magazine) creditors.  The Court notes, however, that Windels apparently never sought to become a member of the Creditors' Committee so that such alleged "unique" interests could be represented.  Moreover, no evidence of separate assets of Entertainment has been shown which would support the separate classification and treatment of its creditors.  Even if there were some evidence to effect a separate classification of such creditors, none of the Debtors' assets are free of Textron's lien.  In essence, the creditors of all the Debtors are in the same situation -- no value is available for them unless Textron is willing to substantially compromise its lien.

Based on the testimony of Mr. Berliner and Mr. Miller, the Court finds that the Debtors have shown a substantial identity between the entities to be consolidated.  Among other things, the Debtors had the same officers, directors and shareholders.  They conducted the same general business operations under very similar names.  Inter-company dealings were done without usual company formalities.  Accounts receivable were all billed from Enterprises.  Windels certainly knew that.  There is no evidence that creditors viewed the Debtors as anything other than a single entity.  Based on all of the evidence, the Court finds that the Debtors have demonstrated the prerequisites for substantive consolidation.

With regard to the assertion by Mays, in contesting the Debtors' good faith, that the Debtors failed to give him notice of board meetings and board actions, the Court points to the testimony of Jeffrey Scott who stated that efforts were made to email Mays at his new venture. Even if such efforts did not result in notification, given Mays knowledge and involvement in this case, including his appearance at the disclosure statement hearing, the Court finds it

5

disingenuous to now raise the issue of notice for the first time. Further, Mays' central argument is that greater value can be realized and, therefore, the Plan improperly benefits BE/GS to the detriment of unsecured creditors. As stated previously, however, there is simply no support for Mays' position as to value. Finally, Mays suggests that the Debtors are treating unsecured creditor, L. Londell McMillan ("McMillan"), differently from other unsecured creditors by offering him an opportunity other such creditors were denied. McMillan is a principal in Northstar, a company to whom BE/GS has prospectively agreed to sell a participation in the equity of the Reorganized Debtor that BE/GS is to receive under the Plan. The Agreement will grant Northstar the right to designate at least one director of the Reorganized Debtor's board and, according to the Debtors, Northstar intends to designate McMillan who, it is believed, has unique industry experience which will enhance the Reorganized Debtor's business prospects and operational efficiencies. The Court finds that the Agreement is prospective and is not a modification of the Plan or an attempt to treat McMillan differently from other unsecured creditors. The Debtors are not party to the Agreement. Moreover, the Agreement does not impact McMillan's claim against the Debtors or any claims the Debtors may have against McMillan (which claims are to be assigned to the Source Creditors' Trust for the benefit of unsecured creditors).

Windels asserts that the bankruptcy petitions for Entertainment and Magazine were filed without the approval of board members Mays and Raymond Scott and that, as a result, the cases should be dismissed. There was no effort made by either Mays or Windels to seek such relief, although each of them was aware of the filings and certainly Mays was aware that he was not present at the relevant board meeting. As noted previously, Jeffrey Scott testified that efforts were made to notify Mays and Raymond Scott of the board meeting at which the filing of the

6

petitions was approved.  The Court finds that such notice was adequate and the actions taken by

the board at such meeting proper.  It would appear that even if the action of the board were

improper because of a lack of notice, Mays effectively ratified it by remaining silent.